FEDERAL DEPOSIT INSURANCE CORPORATION, PLAINTIFF-APPELLANT, v. CHARLOTTE ROSEN, LINDA HYMAN, JANE FEDER, CHANDLER ASSOCIATES, LEONARD FEINEN AND MARY FEINEN, INDIVIDUALLY AND AS PARTNERS TRADING AS COLUMBIA PARK HOLDING ASSOCIATES, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 10, 1983—Decided February 9, 1983.

provision in the bill as passed by the Legislature or in the Governor's objections that the bill be applied retroactively. Certainly, in the absence of such direction we could hardly apply a statute which deals with local budgets and utility rates retroactively. *See Gibbons v. Gibbons,* 86 *N.J.* 515 (1981). It should, of course, be understood that if the bill becomes law, either as originally passed or in an amended form, defendant must comply with its specific requirements notwithstanding this opinion. In such case, if defendant continues to include in its utility budget an item for payment in lieu of gross receipts taxes, plaintiff is free to challenge such inclusion.

Before Judges ARD, KING and McELROY.

*Paul M. Hanlon* argued the cause for appellant (*Schumann, Hession, Kennelly & Dorment,* attorneys; *Louis E. Della Torre, Jr.* of counsel.)

*Robert S. Feder* argued the cause for respondents.

The opinion of the court was delivered by

KING, J.A.D.

This is an appeal from the trial judge's refusal to permit the Federal Deposit Insurance Company (FDIC) to redeem a sublease assigned as mortgage security for a loan made to the sublessor. This is the procedural history.

In June 1966 Columbia Parking Holding Company, predecessor of Columbia Park Holding Associates (CPHA), subleased certain property in North Bergen to Surf Realty Company (Surf). On May 31, 1971 Surf assigned the sublease to First State Bank of Hudson County (bank) to secure a loan. When the bank subsequently failed, the FDIC acquired its interest in the property in June 1976.

The leased property has been the subject of several lawsuits by CPHA seeking to dispossess Surf for nonpayment of rent and taxes. One of Surf's subtenants and a related company, Columbia Park Liquors, Inc., and Surf filed petitions for reorganization under chapter XI and delayed the dispossess dispositions. On October 25, 1978 Judge O'Brien entered an order for possession in favor of CPHA. The FDIC unsuccessfully tried to enjoin the order. On July 26, 1979 Judge Gaulkin entered a judgment in favor of the FDIC, declaring the assignment from Surf to the bank to be a mortgage and foreclosing it. In this action the FDIC sought to redeem the lease.

The FDIC commenced this action by filing a complaint in the Superior Court, Chancery Division, Hudson County, on March 13, 1981. It named CPHA and the association's partners individually as defendants and sought judgment declaring its equitable right of redemption and restraining defendants from interfering with possession of the leased premises. Defendants' answer was filed April 2, 1981. It alleged that the FDIC had (1) refused to pay the leasehold's arrearages, (2) was bound by the judgments against Surf, (3) was guilty of laches, (4) was estopped from bringing the action, and (5) must deposit the amount of the arrearages with the court.

As the result of informal conferences before Judge Castano, the parties entered into and filed a stipulation of facts. Judge Castano subsequently disqualified himself and the matter was heard by Judge Geronimo on April 30, 1982. On May 10, 1982 he entered an order dismissing the complaint. In an oral opinion he found that the forfeiture was not harsh or oppressive in this

commercial context, particularly in view of the FDIC's repeated failure to post the arrearages.

The stipulation of facts under which the case was tried is attached as Appendix A. Based on these facts, Judge Geronimo found as follows

> Well, Mr. Hanlon, I've carefully considered this matter, and it's the Court's opinion here that there is nothing unjust, nothing inequitable about this forfeiture, nothing harsh, oppressive or odious, and I base that on the past history of this entire situation, the fact that this was a commercial transaction, the fact that this is not a typical landlord situation or a typical mortgagor or mortgagee situation.
>
> I further find that the FDIC has sat on its rights for over two years and three months. I further find that the lease between CPHA and Surf Realty was effectively terminated. There was nothing technical about this foreclosure at all. I therefore find in favor of the defendants.

On appeal the FDIC argues that the forfeiture was oppressive, that Surf's misconduct should not bar the redemption, that the commercial nature of the transaction is irrelevant, that the FDIC's status as a third party is irrelevant, and that it was not guilty of laches.

Case law regarding forfeiture of leases is sparse and somewhat confusing. In this State relief has been granted where a lessor waived the breach. *See Brower v. Asbury Park Bd. of Comm'rs,* 103 *N.J.Eq.* 176, 178 (Ch.1928) (acceptance of rent installments with knowledge of a violation waived the right of forfeiture). Relief has also been granted where only slight delays in payment occurred or where the tender occurred prior to the institution of the ejectment suit or immediately after judgment. *See Vineland Shopping Center, Inc. v. DeMarco,* 35 *N.J.* 459, 461 (1961); *D. Paradis Co. v. North Hudson Holding Co.,* 137 *N.J.Eq.* 430, 432 (Ch.1946) (restraining forfeiture pending a full hearing on the tenant's suit); *Azar v. Jabra,* 167 *N.J.Super.* 543, 545–546 (Cty.D.Ct.1979). Also, where the forfeiture would be disastrous for the tenant, relief has been granted. *See Rivoli Holding Co., Inc. v. Ulicny,* 109 *N.J.Eq.* 54, 57 (Ch. 1931).

■ Before relief will be granted, the tenant must be capable of placing the lessor in the position it would have occupied if the breach had not occurred. 49 *Am.Jur.2d, Landlord and Tenant,* § 1088 at 1047. There must be a strong expectation that the tenant will perform in the future. *Id.* § 1089 at 1048. Courts have split over whether a tenant's willfulness bars equitable relief, but agree that where a tenant has engaged in a course of conduct of nonpayment of rent, relief may be denied. *Id.* § 1091 at 1048. None of the cases in this area fully enumerate the factors which the court of equity should or should not consider in determining whether equitable relief is appropriate. The decisions are fact-sensitive, demonstrating that a broad inquiry into all the circumstances of the case and a balancing of all equities is required.

■ As the FDIC contends, relief from forfeiture is granted in commercial as well as residential leases. *See Vineland, supra.* Generally, no distinction has been made in the equitable redemption cases between the two types of leases. *But see Stanger v. Ridgeway,* 171 *N.J.Super.* 466, 474 (App.Div.1979) (recognizing the shortage of rental housing). But courts of equity are not precluded from considering the nature of the lease. Judge Geronimo based his denial of relief in part on the commercial nature of the lease. Contrary to the FDIC's contention, he did not apply an incorrect standard for relief. He considered the nature of the lease in assessing the equities of this situation. His comments concerning the nature of the lease recognized that the parties had some business experience: "But this is a commercial transaction. These are not naive people who bought a home once in a lifetime." Absent any evidence of over-reaching, we presume the parties dealt at arms' length and knew that the terms of the lease could be enforced. The legitimate expectations of the parties and the reasonableness of their conduct are relevant considerations and should be assessed from the context in which they operated. Judge Geronimo did not abuse his discretion by considering the nature of the lease.

The FDIC argues further that its status as a third party should not affect its right of redemption. A third party with rights under a lease which may be defeated by forfeiture may be granted relief. 49 *Am.Jur.2d, supra,* § 1079 at 1041. *See Morey v. Hoyt,* 62 *Conn.* 542, 26 *A.* 127, 128 (Sup.Ct.Err. 1893), on appeal from new trial 65 *Conn.* 516, 33 *A.* 496 (Sup.Ct. Err.1895). *Accord, Fleming v. Fleming Hotel Co.,* 69 *N.J.Eq.* 715, 717–718 (Ch.), motion to confirm sale 70 *N.J.Eq.* 509 (Ch. 1905). Judge Geronimo nowhere indicates that the FDIC's status restricted its right to relief. Rather, in noting the commercial nature of this transaction, he also observed that it was not a typical landlord or mortgagee situation. Earlier in the hearing he had expressed some doubt that the FDIC, as mortgagee, was entitled to relief under case law pertaining to tenants. The FDIC contended that because of the foreclosure, it stood "in the shoes of Surf" and the judge conceded the point. Later, the judge applied the standard law applicable in landlord-tenant cases. Thus, despite his earlier mistake, he did not apply a different standard because of the FDIC's status.

The extent to which the conduct of Surf may be imputed to the FDIC is arguable. The judge stated that although Surf's conduct was not the FDIC's fault, it was the FDIC's responsibility since the FDIC assumed Surf's position. The FDIC asserts, as mortgagee under Judge Gaulkin's decision, that it stands in Surf's position but then disclaims responsibility for Surf's conduct because it had no control over Surf.

Neither counsel for the parties nor this court have been able to locate any case squarely on point. It is clear that until foreclosure is completed, ownership of the property resides in the mortgagor. *Tracy v. Costa,* 132 *N.J.Eq.* 455, 458 (E. & A.1942). But the mortgagor can convey only the rights it holds to a mortgagee. Whether the mortgagee of a lessee takes subject to defenses the landlord may raise against the mortgagor has not been decided. The closest decision located holds that the assignee of a mortgagee takes subject to the equities be-

tween the original parties. *Koppel v. Olaf-Realty Corp.*, 62 *N.J.Super.* 103, 115 (App.Div.1960).

In the instant case, even though the FDIC could not control Surf's action, holding that the FDIC's rights in this matter are limited by Surf's conduct is fair. The FDIC assumed the interest of the State Bank in 1976 and foreclosed it with full knowledge of the defaults and CPHA's attempt in 1974 to terminate the lease for nonpayment.

The trial judge had to balance the equities present on both sides of this case. The balancing process required consideration of the willfulness and unfairness of Surf's conduct towards CPHA. CPHA had attempted to pay the taxes on the leased premises and had posted $75,000 to prevent a tax foreclosure. The defaults have involved CPHA in various forms of litigation for nine years, requiring considerable expenditures for counsel fees. Perhaps most damaging, CPHA has been unable to develop the property because of the litigation. While the damage CPHA suffered is primarily economic, the costs of its inability to develop the property are incalculable. The same may be true of the emotional costs this vexatious dispute has spawned.

The FDIC claims the lease as the sole collateral for a debt exceeding $1,000,000. It had no control over Surf and stands prepared to pay the accrued rent, taxes and interest due for the leased premises. Permitting the FDIC to redeem the lease would also further a policy of protecting the public treasury.

The FDIC, however, participated in creating its own problem by failing to take measures to protect its rights. Judge Geronimo found that the FDIC "sat on its rights for over two years and three months." The FDIC refused on at least three occasions, the earliest in September 1978, to post arrearages on the lease to prevent forfeiture. The record shows that the FDIC was a party to the action for possession and was aware that a judgment for possession could eliminate its collateral. The FDIC admitted at oral argument that it could have posted the arrearages pending the appeal of Judge Gaulkin's decision of July 1979. The FDIC steadfastly refused to post the arrearages,

estimated at the time at $60,000 to $70,000, because it ultimately might acquire only a month-to-month lease or nothing. It contends that it preferred not to gamble with the public's money. The writ of possession was entered on November 29, 1978 but this action was filed on March 13, 1981, and only after Surf's petition for certification was denied.

Laches has traditionally been interpreted as unreasonable, unexcused and unexplained delay in asserting a claim when the delay results in prejudice. *West Jersey Title & Guar. Co. v. Industrial Trust Co.,* 27 *N.J.* 144, 153–154 (1958); *Meadowlands Communications Systems, Inc. Application* 175 *N.J.Super.* 53, 63–64 (App.Div.), certif. den. 85 *N.J.* 455 (1980). Our Supreme Court recently stated:

> The length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs. *Pavlicka v. Pavlicka,* 84 *N.J.Super.* 357, 368–69 (App.Div. 1964). *The length of the delay alone* or in conjunction with the other elements *may result in laches. Obert v. Obert,* 12 *N.J.Eq.* 423, 428–30 (E. & A. 1858). It is because the central issue is whether it is inequitable to permit the claim to be enforced that generally the change in conditions or relations of the parties coupled with the passage of time becomes the primary determinant. That is why some courts have stated that the mere lapse of time is insufficient, though, as indicated above, that is an overstatement of the principle. Inequity, more often than not, will turn on whether a party has been misled to his harm by the delay. *Norfolk v. New Brunswick Hosiery Co. v. Arnold,* 49 *N.J.Eq.* 390, 397 (Ch.1892); *West Jersey Title & Guaranty Co. v. Industrial Trust Co.,* 27 *N.J.* 144, 153 (1958); *Hinners v. Banville,* 114 *N.J.Eq.* 348, 357 (E. & A. 1933). It is with these principles in mind that we turn to the facts of this case. [*Lavin v. Hackensack Bd. of Ed.,* 90 *N.J.* 145, 152–153 (1982); emphasis supplied]

The FDIC argues that the rationale for its refusal to post the arrearages is a sufficient excuse for the delay. But it was not reasonable to refuse to invest less than 10% of the amount of the debt secured by the lease to preserve the lease. The FDIC also argues that the delay of two years and three months has not prejudiced CPHA. CPHA has not alleged any specific prejudice resulting from this delay, but the expense of litigation and the inability to develop the property because of the cloud of litigation over it for almost a decade are strong considerations of prejudice. The FDIC's failure to step in at the outset contributed to the necessity for an action for ejectment against Surf.

Rights must be promptly asserted to be enforced by a court of equity. *Bridgeton Ed. Ass'n v. Bridgeton Bd. of Ed.*, 132 *N.J.Super.* 554, 558 (Ch.Div.1975). One of the ancient maxims of the Court of Chancery is that equity aids the vigilant. 2 *Pomeroy, Equity Jurisprudence* (5 ed. 1941), § 418 at 169; *McClintock, Equity* (2 ed. 1948), § 28 at 71. The FDIC did not assert its rights promptly. Since the FDIC chose to take the risk of losing the collateral, if prior litigation resulted adversely, it must live with its choice. The denial is affirmed; we find no abuse of discretion in refusing to set aside the forfeiture.

Affirmed.

## APPENDIX A

### STIPULATION OF FACTS

This is an action commenced by the Federal Deposit Insurance Corporation (hereinafter FDIC) against Charlotte Rosen and others, trading as Columbia Park Holding Associates (hereinafter CPHA). FDIC brings this action as assignee of a lease wherein Surf Realty Co. (hereinafter Surf) was assignor. The lease in question is a sublease between Columbia Park Holding Corp. as landlord and Surf as tenant and is dated June 23, 1966. Columbia Park Holding Corp. was the predecessor of CPHA. The lease under which Surf was a tenant, was in fact assigned to First State Bank of Hudson County. When that Bank subsequently failed the Bank's interest in the lease (if any) was acquired by the FDIC.

The property covered by the lease is an 11.44 acre tract of land in North Bergen located adjacent to the intersection between Kennedy Boulevard and the East-West Highway which connects the New Jersey Turnpike and other major roads with the Lincoln Tunnel. The property abuts the westerly side of Kennedy Boulevard and the northerly side of the Tunnel Highway. The land involved in this suit is improved with two commercial buildings, one of which contains a Shop-Rite supermarket (which occupies approximately 47,000 square feet and a parking area of approximately three acres) and the other of

which contains a liquor store occupied by Columbia Park Liquors, Inc., an entity related to Surf, i.e., its shareholders are all members of the immediate family and/or relatives of Joseph Palladino, as are all of the shareholders of Surf. The remainder of the property contains the aforementioned parking area for the supermarket and the liquor store and one seven acre parcel which is unimproved. On adjacent property not involved in this litigation, but having common access from adjacent streets, there is a bowling alley and off-street parking for its patrons. Both tracts consisting of 17 acres are commonly referred to locally as "Columbia Park".

The instant case is not the first law suit involving this property. The property has a long history of litigation. The more important cases are hereinafter described.

### A. The Hudson County District Court Cases.

From November 1, 1966 until the date that the suit for summary dispossess (described infra) was started in the Superior Court, there have 24 separate actions commenced by CPHA against Surf in the Hudson County District Court, all for possession for non-payment of rent and taxes. All of the cases resulted in eventual payment of all sums demanded plus counsel fees of CPHA as required by the lease, and on two occasions included rental increases and substantial additional payments of CPHA's counsel fees. Some of the settlements resulted in other changes in the lease from time to time that are not relevant to this proceeding.

### B. Charlotte Rosen, et al. v. Surf Realty Co., First State Bank of Hudson County, et al., Superior Court Hudson County, Law Division and First State Bank of Hudson County v. Columbia Park Holding Associates, et al., Superior Court Hudson County, Law Division.

These consolidated cases were instituted in July of 1974 by First State Bank and CPHA respectively. By their respective

complaints First State Bank sought to prevent the forfeiture of the lease and CPHA sought a judgment terminating the lease. These actions were ultimately settled by an agreement made in open Court before the Honorable Samuel A. Larner (now retired). The terms of the settlement (insofar as is relevant to the present litigation) were as follows: (1) the rental due under the lease was increased by $10,000.00 per year to a total annual rental of $52,000.00 per year; (2) the Bank agreed to pay all arrearages for rent and taxes under the lease, including interest, and to pay the counsel fees for the attorneys for CPHA; and (3) in turn CPHA agreed that upon the payment of the aforementioned sums, the sublease would be in full force and effect and that CPHA would recognize the leasehold mortgage to the Bank.

C. *Charlotte Rosen, et al. v. Surf Realty Co. Hudson County District Court.*

In July of 1977, Surf failed to make a tax payment that was due to be paid to CPHA at that time. When it failed to receive the aforesaid tax payment CPHA notified Surf by certified mail that its failure to cure the default in accordance with the terms of its lease would result in a cancellation of the lease. CPHA received no response to that letter and again after 30 days Surf was further advised by certified mail on August 29, 1977, that its lease was terminated and that effective at that time Surf was a month to month tenant. Thereafter, when it failed to received the September 1977 rent payment due from Surf, CPHA notified Surf that its month to month tenancy was terminated and instituted an action in the Hudson County District Court to dispossess Surf. Surf paid its rent for September and the action was dismissed.

D. *Charlotte Rosen, et al. v. Surf Realty Co., Superior Court Hudson County, Law Division.*

On December 27, 1977, CPHA, instituted suit against Surf for possession of the leased premises, for eviction of Surf therefrom

and for payment by Surf for the use and occupancy of said premises, the last payment of rent and taxes having been made by Surf in October, 1977. Surf having failed to answer or otherwise defend, default was entered against it on February 6, 1978. On March 13, 1978, Surf filed a Motion for an Extension of the Time within which it could answer or otherwise move with respect to the Complaint.

The Superior Court ruled on April 7, 1978 that Surf could file an answer only if it posted all arrearages with the Court by a specific date and upon its failure to do so CPHA would have judgment for possession. A form of order was ultimately entered after a motion to settle such form was heard on April 22, 1978. Payment was to be made into Court by May 22, 1978.

The trial court in considering Surf's application to file a late answer noted that the matter had come up periodically because the money had not been paid in accordance with the terms of the lease and that there had been "case after case after case". The court (Judge O'Brien) also noted that Columbia Park Liquors consisting of the Palladinos, continued to pay rent to Surf also consisting of the Palladinos and none of that rent was being applied to the rent due by Surf to CPHA. The Court then entered its order allowing Surf to answer only if it paid the arrearages into Court by May 22nd.

On May 22, 1978, without any notice to CPHA, a Federal Bankruptcy Judge enjoined all further proceedings in the case upon application of Columbia Park Liquors, Inc. A receiver had previously been appointed on February 28, 1978 in an order containing the usual general restraints at the commencement of a bankruptcy proceeding. The Chapter XI proceedings included Columbia Park Liquors, a corporation, as well as four members of the Palladino family. CPHA immediately moved to dissolve the injunction and the matter was heard within a few days. No decision was rendered by the Bankruptcy Judge until October

24, 1978 at which time the injunction was dissolved. In the meantime, on June 26, 1978, the attorney for the parties in Chapter XI obtained on order from the Bankruptcy Court permitting Surf to apply to the Superior Court in the original dispossess action for "appropriate relief or instructions regarding the Superior Court's order for the payment of $63,000.00" in back rent and taxes. The application was for a preliminary injunction requiring the FDIC to advance the money required by the Court. That application was heard on September 15, 1978, was opposed by the FDIC and a ruling adverse to Surf was made and was not appealed.

On October 25, 1978, an Order and judgment for possession was entered. On October 31, 1978 the FDIC applied to the Court seeking an injunction against CPHA barring CPHA from enforcing its judgment for possession. Its application was denied. Thereafter a writ of possession was issued on November 29, 1978. On December 7 and 8, 1978, Surf filed Notices of Appeal from the judgment of possession. On June 18, 1980, the judgment for possession was affirmed by the Appellate Division. Surf petitioned the Supreme Court of New Jersey for certification which was denied.

E. *Federal Deposit Insurance Corporation v. Surf Realty Company, et al., Superior Court Hudson County, Chancery Division.*

On January 12, 1977, the FDIC commenced an action in the Superior Court of New Jersey, Chancery Division, Hudson County seeking to have the assignment of the lease from Surf to the Bank declared to be a Mortgage of Surf's leasehold and to foreclose said Mortgage. On February 9, 1978, the FDIC filed and commenced efforts to serve an Amended Complaint. Named as defendants *inter alia* were Columbia Park Liquors, Joseph P. Palladino, Patrick J. Palladino, Nicholas J. Palladino, Marianne Palladino. Prior to the expiration of said defendant's

time to answer, they filed a proceeding in the United States District Court for the District of New Jersey under Chapter XI of the Bankruptcy Act. As is customary in such cases, the United States District Court entered an Order as a matter of course staying all suits against said parties, including the FDIC's foreclosure action. Thereafter, on December 19, 1978, the United States District Court entered an Order modifying the stay and permitting the foreclosure action to proceed. Answers and Counterclaims to the Amended Complaint were then filed by Surf, Columbia Park Liquors and the Palladinos. The matter was heard by Judge Geoffrey Gaulkin between July 3 and 10, 1979. On July 14, 1979, Judge Gaulkin rendered a decision in which he found the assignment of the lease from Surf to the Bank to be a Mortgage of the leasehold, granted foreclosure of that Mortgage and dismissed the defendants' Counterclaims. An appropriate judgment was entered on July 26, 1979. On September 13, 1979, Surf, Columbia Park Liquors and the Palladinos, filed Notices of Appeal from that judgment. On May 14, 1981, following oral argument, the Appellate Division affirmed the judgment of foreclosure. On June 3, 1981, Surf, Columbia Park Liquors and Joseph P. Palladino petitioned the Supreme Court of New Jersey for certification, which petition was denied.

The parties have stipulated that all testimony and pleadings from the actions referred to above or portions thereof may be admitted into evidence, as well as any relevant documents such as the lease and all amendments thereto. The testimony, pleadings and documents offered by each party will be submitted with the briefs to be filed herein.