**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0008-18T4

WELLS FARGO BANK,
NATIONAL ASSOCIATION AS
TRUSTEE FOR MORGAN STANLEY
ABS CAPITAL I INC. TRUST 2007
HE-4 MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-HE4,

     Plaintiff-Appellant,

v.

NJ PROPERTY GROUP, LLC,
JOHN D. FLOOD, LAVALLET
CAPITAL, LLC, DANIEL E. STRAFFI,
and SM FINANCIAL SERVICES
CORPORATIONS,

     Defendants.

_____

Submitted October 28, 2019 – Decided June 12, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-031547-15.

Stradley Ronon Stevens & Young, LLP, attorneys for appellant (Dustin Peter Mansoor, on the briefs).

Finestein & Malloy, LLC, attorneys for respondents Raymond Cooper and Dara Ofner (Russell M. Finestein, on the brief).

PER CURIAM

Plaintiff Wells Fargo Bank, National Association as Trustee for Morgan Stanley ABS Capital 1 Inc. Trust 2007-HE4 Mortgage Pass-Through Certificates, Series 2007-HE4 (Wells Fargo) appeals the July 20, 2018 order for summary judgment entered by the trial court in favor of defendants Raymond Cooper and Dara Offner. Plaintiff had filed a complaint seeking to foreclose on real property, as to which it had previously possessed a mortgage. Prior to plaintiff filing its complaint, ownership of the property had changed hands several times after an allegedly fraudulent assignment and discharge of plaintiff's mortgage. Title to the property was eventually deeded to defendants, who executed a separate mortgage on the property. Defendants intervened in the foreclosure action. The court granted summary judgment in favor of defendants on the basis that plaintiff's claim was precluded by the doctrine of laches. Having reviewed the record, and in light of the applicable law, we affirm.

We discern the following facts from the record. Defendants Raymond Cooper and Dara Offner acquired title to the subject property by deed dated September 24, 2014 from NJ Property Group, LLC. Defendants obtained purchase money financing from Weichert Financial Services in order to purchase the property. Approximately one year after defendants purchased the property, Plaintiff commenced this action to foreclose a mortgage that had been discharged of record in 2013.

By way of background, on October 6, 2006, codefendant John D. Flood executed an adjustable rate note in favor of WMC Mortgage Corp., securing a loan for $304,000. Flood executed a corresponding mortgage, which encumbered the subject property located on Pleasant Hill Road in Flanders in favor of Mortgage Electronic Registration (MERS) as nominee for WMC Mortgage. The mortgage was recorded on October 13, 2006. On September 12, 2007, MERS as nominee for WMC assigned the mortgage to plaintiff, and the assignment was recorded on November 26, 2007.[1]

---

[1] A corrective assignment to plaintiff was executed on December 22, 2011 and was recorded on January 3, 2012.

On August 30, 2007, plaintiff through its counsel Zucker, Goldberg & Ackerman commenced an action to foreclose its mortgage.

On August 2, 2012, plaintiff assigned its mortgage to JAMM Holdings and Investments, LLC (JAMM), which assignment was recorded on January 2, 2013. Also on January 2, 2013, JAMM executed and recorded a discharge of its mortgage. One month later, on February 4, 2013, plaintiff voluntarily dismissed the 2007 foreclosure complaint without prejudice. The notice of dismissal indicated that "[its] foreclosure action will be restarted."

After plaintiff's 2012 assignment of its mortgage to JAMM, ownership of the property was transferred three times in less than six months. Flood deeded the subject property to Zia Property Acquisitions, LLC on August 8, 2012, which deed was recorded on December 28, 2012. Next, Zia deeded the subject property to Floaters, LLC on November 12, 2012, which deed was recorded on January 23, 2013. Floaters deeded the subject property to NJ Property Group, LLC on February 7, 2013, which deed was recorded on February 13, 2013. Finally, NJ Property Group deeded the subject property to defendants on September 24, 2014 for a purchase price of $329,000, which deed was recorded on September 30, 2014. Defendants executed a corresponding purchase money mortgage with Weichert Financial Services for $322,954.

 A-0008-18T4

On September 16, 2015, more than eight years after it filed its initial foreclosure complaint in 2007, and over two-and-a-half years after the voluntary dismissal of its 2007 complaint, plaintiff filed the instant action to foreclose its mortgage on the subject property.

It is indisputable that the mortgage as to which plaintiff seeks redress was assigned and discharged of record on January 2, 2013. Plaintiff nonetheless contends that both the assignment of its mortgage to JAMM and JAMM's discharge of the mortgage were fraudulent.[2] Plaintiff argues that summary judgment was inappropriate because there are issues of material fact concerning whether it knew about the assignment and discharge prior to defendants' intervention in the instant foreclosure.

The record reveals, however, that on October 17, 2013, almost a year before defendants acquired the subject property, Stephen Flatow of Vested

---

[2] Plaintiff points to certain irregularities in connection with the assignment, which it claims raise material issues of fact that would support its fraud allegations. First, plaintiff notes that although the assignment was executed in August 2012, the notarizing signature was dated "August 2010." Moreover, the notarization does not indicate the specific day on which the assignment was executed. In addition, there was a minor discrepancy between the listed assignor for the JAMM assignment and the assignor listed in the prior assignment of the mortgage. We do not find these alleged discrepancies to be material in light of our conclusion that plaintiff knew or should have known of both the JAMM assignment and discharge long before the property was conveyed by deed to defendants.

A-0008-18T4

Title, the title insurer for NJ Property Group, sent an e-mail to Michael Ackerman of Zucker, Goldberg & Ackerman, plaintiff's counsel in the first foreclosure action. The e-mail stated that, as per the Morris County Clerk's records, the mortgage was discharged of record. Ackerman responded on October 18, 2013 that his firm was "showing the discharge," and "waiting to hear back from [plaintiff] as to why the referral [was made]." Plaintiff argues, without any supporting certification from a Wells Fargo representative, that this knowledge by its attorney should not be imputed to Wells Fargo because it was unclear if Ackerman was representing plaintiff in 2013.

Regardless, in June 2014, almost four months before the property was conveyed to defendants, Phelan, Hallinan & Schmieg, LLP, then-acting counsel for plaintiff, obtained a foreclosure information report from Altisource dated June 4, 2014. This report indisputably disclosed the assignment of plaintiff's mortgage from plaintiff to JAMM, as well as the various transfers of title that followed. Notwithstanding its June 2014 receipt of documentation of the assignment that plaintiff now claims was fraudulent, plaintiff failed to take any action to vacate the assignment, and it delayed filing a new foreclosure action

until September 16, 2015, more than fifteen months after learning of the JAMM assignment.[3]

On March 1, 2018, defendants moved for summary judgment. In response, plaintiff did not supply a certification from a representative of Wells Fargo to counter plaintiff's statement of undisputed material facts.

On July 20, 2018, the motion judge entered an order granting defendants' motion for summary judgment and dismissing plaintiff's complaint with prejudice. The judge determined that Flood's mortgage had been discharged and was thus null and void. The judge applied the doctrine of laches and determined that records contained in the Registrar's Office of Morris County definitively showed that "plaintiff's mortgage was officially discharged of record prior to [defendants'] purchase of the subject property." The motion judge found that although the signatory on the August 10, 2012 discharge, Earl David, was later disbarred and pled guilty to fraud, "there [was] no evidence that the discharge

---

[3] Plaintiff's counsel filed a certification in support of its February 7, 2017, "Motion to Fix Terms of Lost Assignment," which was filed during the pendency of this action. In the certification in support of the motion, plaintiff's counsel certified that plaintiff had assigned the mortgage to JAMM Holdings and Investments, LLC, and that it was plaintiff's intent that JAMM would assign the mortgage back to plaintiff. By order dated April 3, 2017, the motion was denied. On the same date of April 3, 2017, the court granted defendant's motion to intervene in the matter.

was forged . . . no evidence that the signatory was not in fact a bona fide representative of [plaintiff] . . . [and] no evidence that JAMM intended to re-assign the mortgage back to [plaintiff]."

The motion judge considered that plaintiff had "dismissed its foreclosure suit without prejudice one month after the mortgage was discharged of record and never took any action to challenge the alleged fraudulent discharge until after [defendants] acquired the property." The judge concluded that plaintiff's inaction "substantially prejudiced [defendants]," and applied the doctrine of laches "to prevent further injury to [defendants]." Thus, summary judgment was granted in favor of defendants. This appeal ensued.

On appeal, plaintiff raises the following arguments:

> I. THIS COURT SHOULD REVERSE THE SUMMARY JUDGMENT ORDER.
>
> A. STANDARD OF REVIEW.
>
> B. THE TRIAL COURT IGNORED EVIDENCE CREATING TRIABLE ISSUES OF FACT REGARDING THE APPLICATION OF LACHES.
>
> 1. [PLAINTIFF] DID NOT HAVE KNOWLEDGE OF THE FRAUDULENT DISCHARGE UNTIL [DEFENDANTS] ATTEMPTED TO INTERVENE IN THE SECOND FORECLOSURE ACTION.

2. THERE WAS NO UNREASONABALE DELAY BY WELLS FARGO.

3. [DEFENDANTS] HAVE NOT BEEN PREJUDICED.

## II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

In reviewing a grant of summary judgment, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). If there is no issue of fact, we give no special deference to the trial court's rulings

on matters of law. Templo Fuente, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome [a summary judgment] motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005); see R. 4:46-5(a) ("an adverse party may not rest upon the mere allegations or denials of the pleading . . . [to show] that there is a genuine issue for trial."). "[W]here the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature,' the proper disposition is summary judgment." Brill, 142 N.J. at 529 (quoting Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).

The doctrine of laches "[denies] a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Knorr v. Smeal, 178 N.J. 169, 180-81 (2003). "Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced

party acted in good faith believing that the right had been abandoned." Id. at 181. "Generally speaking, laches is not imputed to one who had no knowledge, or means of acquiring knowledge, of the facts giving rise to his cause of action." Heagen v. Borough of Allendale, 42 N.J. Super. 472, 485 (App. Div. 1956) (emphasis added).

"The time constraints of laches, unlike the periods prescribed by the statute of limitations, are not fixed but are characteristically flexible."[4] Lavin v. Bd. of Educ., 90 N.J. 145, 151 (1982). Whether a delay is unreasonable depends upon the circumstances of a particular case. Allstate Ins. Co. v. Howard Sav. Inst., 127 N.J. Super. 479, 489 (Ch. Div. 1974). "The length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs. The length of the delay alone or in conjunction with the other elements may result in laches." Fed.

---

[4] At the time plaintiff filed its second foreclosure complaint in September 2015, the statute of limitations for foreclosing on residential mortgages was twenty years from the date of default. N.J.S.A. 2A:50-56.1. Because this action arises in equity, however, we are free to evaluate whether laches applies to bar plaintiff's claim. See Fox v. Millman, 210 N.J. 401, 420 (2012) ("if the subject matter in controversy in a Court of Chancery is of an equitable nature, not cognizable in a court of law, statutes of limitations although not ignored have no obligatory application, but the court will instead apply the doctrine of laches." (quoting Hyland v. Simmons, 152 N.J. Super. 569, 576 (Ch. Div. 1977), aff'd, 163 N.J. Super. 137 (App. Div. 1978))).

A-0008-18T4

Deposit Ins. Corp. v. Rosen, 188 N.J. Super. 230, 237 (App. Div. 1983). "Implicit in the concept of inexcusable delay is the ability of the party against whom laches is asserted to . . . previously assert the claim which is now alleged to be barred. The party . . . cannot assert ignorance of the facts if such ignorance is a result of his own culpable neglect." Talcott Fromkin Freehold Assocs. v. Freehold Tp., 383 N.J. Super. 298, 320 (Law Div. 2005).

With these governing principles in mind, we agree with the trial court's conclusion that, even setting aside the issue of laches, plaintiff failed to raise an issue of material fact for trial. In that regard, plaintiff's claim that its assignment to JAMM and JAMM's subsequent discharge were fraudulent is utterly unsupported by anything other than bald assertions. See Puder, 183 N.J. at 440. In that regard, plaintiff failed to provide a rebutting certification from a Wells Fargo representative in opposition to summary judgment in support of its claims of fraud. In fact, the only certification submitted by its counsel in this action averred that plaintiff volitionally assigned its interest to JAMMS in 2012 with the expectation that JAMMS would reassign its interest to plaintiff at an unspecified date in the future. The judge correctly concluded that "there [was] no evidence that the discharge was forged . . . no evidence that the signatory was not in fact a bona fide representative of [plaintiff] . . . [and] no evidence that

12

JAMM intended to re-assign the mortgage back to [plaintiff]." Thus, the mortgage having been discharged in 2013, plaintiff's mortgage was null and void and it lacked standing to foreclose. Regardless, we also affirm the trial court's holding that plaintiff's action is barred by the doctrine of laches. There was a significant delay between the voluntary dismissal of plaintiff's 2007 foreclosure action in 2013 (one month after the JAMM discharge) and its reinstitution of the action in 2015. In the interim, the property had been sold to defendants, who obtained financing for the purchase and thereafter made improvements to the property. The records contained in the Registrar's Office of Morris County definitively showed that "plaintiff's mortgage was officially discharged of record prior to [defendants'] purchase of the subject property." Thus, defendants had no notice of any defect in title. On the other hand, plaintiffs exercising due diligence between the 2012 discharge of the mortgage and its 2015 renewal of its foreclosure certainly knew or should have known of the JAMM assignment.

Defendants' baseless assertions of ignorance do not excuse them from the laches bar. Talcott, 383 N.J. Super. at 320. In that regard, it is well settled that "knowledge on the part of the attorney for a purchaser of land, or a judgment creditor, of a defect in title is imputed to the client." Colegrove v. Behrle, 63

13

N.J. Super. 356, 364 (App. Div. 1960). The imputation doctrine, derived from the common law, rests upon the premise that "a principal is deemed to know facts that are known to its agent." NCP Litig. Tr. v. KPMG LLP, 187 N.J. 353, 366 (2006). The Restatement (Third) of Agency [Restatement] 5.03 (2006) sets forth the common law rule: "For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal[.]" Ibid.

At the very latest, we conclude that plaintiff was on notice of the fraudulent assignment on June 4, 2014, when Phelan Hallinan & Schmieg, its then-attorneys, received the results of a title search indicating that plaintiff had assigned the mortgage to JAMM. See Colegrove, 63 N.J. Super. at 364; KPMG, 187 N.J. at 366; Cox, 164 N.J. at 496. Notwithstanding, plaintiff never took action to challenge the assignment. Plaintiff never filed a lis pendens. It took no legal action until it filed its second complaint to foreclose on the property on September 16, 2015. In the interim, defendants purchased the property on September 24, 2014 for $329,000, and executed a mortgage for $322,954. Had plaintiff timely sought to enforce its rights, defendants would have been on notice of an alleged defect in title.

We also reject plaintiff's claim that defendants have not been prejudiced by plaintiff's inexplicable delay in challenging the allegedly fraudulent assignment and discharge. "The primary factor to consider when deciding whether to apply laches is whether there has been a general change in condition during the passage of time that has made it inequitable to allow the claim to proceed." Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 141 (2001). "Inequity, more often than not, will turn on whether a party has been misled to his harm by the delay." Rosen, 188 N.J. Super. at 237 (quoting Lavin, 90 N.J. at 152-53).

In this case, there is no question that equity demands plaintiff's claim be barred. At the time defendants purchased the property, the discharge was filed as of record in 2013. Contrary to plaintiff's claims, defendants had no reason to know of any alleged defect in title. Defendants obtained financing to purchase the property and thereafter spent money to improve the property. Plaintiff, who had constructive knowledge of the fraudulent mortgage in June 2014, failed to take any action until after defendants had already assumed significant financial commitments. As the trial court found, the dismissal of plaintiff's claims was warranted to avoid further prejudice to defendants.

A-0008-18T4

To the extent that we have not addressed the parties' remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION