Inez KAISER, Appellant,

v.

Natalie J. RAPLEY, Appellee.

No. 10853.

District of Columbia Court of Appeals.

Argued Nov. 24, 1976.

Decided Dec. 6, 1977.

S. Churchill Elmore, Washington, D.C., for appellant.

Gordon F. Harrison, Washington, D.C., for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

This appeal requires a construction of § 213(b) of the District of Columbia Rental Accommodations Act of 1975, D.C. Code 1976 Supp., § 45–1653(b). Appellant (tenant) refuses to quit an apartment leased to her by appellee despite the fact that her lease has expired and she has received a notice to quit. There being no genuine issue as to any material fact, the trial court granted appellee's (landlord) motion for summary judgment. Appellant argues that the trial court improperly construed § 45–1653(b) of the Code; and that, in any event, the landlord is estopped from seeking eviction because her retention of late payments led appellant to believe that they were acceptable.

Appellee is the owner of an apartment located in the Watergate West complex, which she leased to appellant for one year. Appellant, who resided in Kansas City, Missouri, was consistently late in her rental payments and on five occasions tendered checks which her bank would not honor due to a lack of sufficient funds. Another time she tendered a cashier's check which was not honored because the check had been altered by appellant.

The landlord, in a series of communications with appellant which started at least as early as February 1, 1975, voiced her disapproval of the delinquencies under the lease and advised that if the terms of the lease were not complied with, the landlord would enforce her rights. In November of 1975, the landlord served notice on the tenant to vacate at the expiration date of the lease. Appellant refused to move and eviction proceedings were commenced on January 6, 1976.

Relying upon D.C. Code 1976 Supp., § 45–1653(b), appellant argues that she cannot be evicted from the apartment because there is no rent owing for the term of the lease [1] and because after the expiration date of the lease she tendered the rent for January and February of 1976. The section appellant relies upon provides that:

Notwithstanding any other provision of law, no tenant shall be evicted from a rental unit, notwithstanding the expiration of his lease or rental agreement, so long as such tenant continues to pay the rent to which the landlord is entitled for such rental unit, unless—

(1) the tenant is violating an obligation of his tenancy and fails to correct such violation within 30 days after receiving notice thereof from the landlord; . . [2]

Appellant argues that the D.C. Council, in employing the proviso "so long as such tenant continues to pay the rent to which the landlord is entitled," did not intend the nonpayment or late payment of rent to be a

---

1. All of the bad checks were eventually covered.

2. Subsections (2) through (6) include other exceptions not here relevant.

violation of an obligation of tenancy so as to bring the matter under subsection (1), *supra*. Appellant also argues that at the time of the suit she was not violating any obligation of the tenancy;[3] and that even if she were, she was not given an opportunity to correct such violation within 30 days.

■ The trial court determined that the real issue of law in this case was whether "a willful, calculated and consistent failure by a tenant to pay rent when due [can be] a present violation of a tenant's obligation under a lease, notwithstanding that the tenant presently owes no back rent."[4] After noting that one of the obligations of a tenancy is that the tenant tender payment when due, the trial court concluded that there was a continuing willful violation of the tenancy and that therefore the landlord was entitled to possession. The court also concluded that the Rental Accommodations Act, properly construed, was not to the contrary. We agree.[5]

The report that accompanied the proposed legislation relates that the section with which we are concerned was envisioned as a protection "from arbitrary and/or retaliatory evictions." The report stated:

> These provisions were intended by the Council to protect tenants and to eliminate improper attempts to remove low and moderate housing stock from the market, to trigger evictions primarily designed to facilitate illicit increases in rent ceilings and to deter the untimely upgrading of housing stock to a level for those few persons who could afford them while there is still a critical shortage of lower priced rental accommodations.[6]

It is apparent that the legislative purpose does not relate to the willful and consistent course of conduct held by the trial court to exist here.

■ Appellant next argues that the landlord is estopped from evicting her because the landlord "acquiesc[ed] in the tenant's pattern of late rental payments without taking affirmative action." Although it is true that the lessor may waive the breach of a covenant by subsequent acceptance of rent, *Klein v. Longo*, D.C.Mun.App., 34 A.2d 359, 360 (1943), the question of waiver is one of intent and depends upon the circumstances of each case. *In re Willow Cafeterias, Inc.*, 95 F.2d 306 (2d Cir.), cert. denied, *Wil-low Cafeterias, Inc. v. Madison Avenue Corporation*, 304 U.S. 567, 58 S.Ct. 950, 82, L.Ed. 1533 (1938). The landlord continually objected to the late payments and appellant could not have been misled as to the landlord's expressed intention to enforce the lease. The trial court's conclusion that the acceptance of rent through December 1975 was not a waiver of the landlord's rights, but simply an acceptance of what was legally due the landlord is not error. *Streeter v. Middlemas*, 240 Md. 169, 213 A.2d 471 (1965). *See also Hall v. Henry J. Robb, Inc.*, D.C.Mun. App., 32 A.2d 707 (1943). The tender of rent was rejected after the termination date of the lease.

■ Finally, appellant asserts that because, after the expiration date, she tendered the rent for January and February 1976, she is entitled to equitable relief under *Trans-Lux Radio City Corp. v. Service Parking Corp.*, D.C.Mun.App., 54 A.2d 144 (1947). Under the *Trans-Lux* line of cases, a court may relieve a tenant from forfeiture of a lease if the tenant tenders all money owing under the lease. Such relief is equitable in nature, however, and "if the tenant seeks equity, he must do equity." *Molyneaux v. Town House, Inc.*, D.C.App.,

---

3. She emphasizes that the statute uses the phrase "*is violating* an obligation of [the] tenancy."

4. Memorandum and Order on Defendant's Motion to Reconsider at 3.

5. We also note in passing that not only is this a continuing violation, but that when a tenant continually pays his rent late, he is not paying

the rent "to which the landlord is entitled." *See* D.C. Code 1976 Supp., § 45–1653(b). A tenant who signs a lease which states that rent is due on a particular day is not entitled to pay it 30 or 60 days late.

6. D.C. Council Report, July 31, 1975, accompanying Bill 1–157 (D.C. Law 1–33).

195 A.2d 744, 746–47 (1963). The court in *Molyneaux* upheld a denial of equitable relief and noted that in order to obtain such relief "the default must not be wilful, deliberate or intentional . . . ." *Id.* at 747. The lower court here concluded that "the defendant's failure to pay timely rent as required by her lease and her payment with checks not covered by sufficient funds in her bank account was willful, calculated and consistent . . . ."[7]

The trial court did not err in its construction of the law nor in denying equitable relief to appellant.

Accordingly, the judgment appealed from is

*Affirmed.*

---

7. Memorandum and Order on Defendant's Motion to Reconsider at 5.