Marshall L. HAMILTON, Appellant,

v.

WILLIAM CALOMIRIS INVESTMENT CORPORATION, INC., Appellee.

Nos. 81–1600 and 82–109.

District of Columbia Court of Appeals.

Argued April 13, 1983.

Decided May 18, 1983.

---

Melvin A. Marshall, Washington, D.C., for appellant.

Philip M. Musolino and Kenneth J. Loewinger, Washington, D.C., for appellee.

Before MACK and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

In these consolidated appeals in two related landlord-and-tenant proceedings, appellant challenges several aspects of the orders under review. We reject all of appellant's contentions and affirm both orders.

## I

On March 3, 1981, appellee filed suit in the Landlord and Tenant Branch for possession of certain real estate (L & T No. 17735–81) based on appellant's habitual untimely payment of rent. The complaint averred that a notice to quit had been served on appellant. In his answer and counterclaim, appellant denied receiving any notice to quit. He also alleged that appellee had continued to accept rental payments after appellant had first been apprised in February 1980 that he was in violation of a lease covenant by failing to pay his rent on time. Finally, appellant counterclaimed for a partial rebate of past rent based on alleged housing code violations. *See Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). A protective order was entered requiring appellant to pay $206.50 monthly into the registry of the court.

At the close of a jury trial, appellant made a motion for directed verdict, which the court construed as a motion to dismiss the complaint. The motion was granted, and the case was dismissed without prejudice, apparently on the ground that the notice to quit was invalid. Appellant then filed a motion for reconsideration asking that the dismissal be with prejudice, and

also renewing an earlier request for attorney's fees. Judge Gardner ruled on that motion on October 29, 1981, in an order which read in part:

  1. The dismissal of plaintiff's claim, entered herein on July 8, 1981, shall operate as an adjudication upon the merits of the claim asserted in plaintiff's complaint.

  2. Reconsideration of the Court's denial of defendant's Motion for counsel fees is denied.

From that order appellant noted the first of these two appeals (No. 81–1600).[1]

Meanwhile, on October 22, 1981, appellee filed a second suit for possession (L & T No. 82924–81), alleging "Failure to cure violations of tenancy; Failure to quit and vacate after notice to quit and vacate expired." Another protective order was entered requiring appellant to pay $227.50 monthly into the registry of the court.

Appellant filed a motion for summary judgment, claiming that the dismissal in L & T No. 17735–81 was *res judicata* as to the claims raised in No. 82924–81. Appellee then filed a motion to strike pleadings and enter judgment in its behalf based on appellant's failure to make the payments required by the second protective order. That motion was provisionally denied by Judge Murphy on the condition that appellant make a protective order payment by January 18, 1982; if he did not do so, judgment would be entered for appellee. Appellant did not make any payment, and on January 28 Judge Murphy entered two orders, one denying appellant's motion for summary judgment and the other granting appellee's motion for judgment.

Five days later, on February 2, appellant filed an "emergency motion to reinstate cause of action, transfering [*sic*] funds of defendant's into Registry for that purpose," in which he asked that the money previously paid into the registry in L & T No. 17735–81 be transferred to his account in L & T No. 82924–81. That motion was denied, and appellant noted his second appeal (No. 82–109).

## II

Appellant asks us first to declare that acceptance of rental payments prior to the expiration of a notice to quit invalidates the notice. Second, he argues that a dismissal with prejudice for failure to serve a valid notice to quit is *res judicata* in a subsequent suit for possession based on a new notice to quit. Third, he claims that the trial court erred in denying his request for attorney's fees. Finally, he asserts that the trial court abused its discretion in denying his so-called "emergency motion."

■ Although the trial court granted appellant's motion to dismiss in L & T No. 17735–81, the basis for that ruling is not entirely clear. From the record it is impossible to determine whether the trial court's conclusion that the notice to quit was defective was premised on the acceptance of rental payments prior to expiration of the notice or on some other ground. Whatever the court's rationale may have been, we need not decide the issue which appellant presents to us concerning the effect of the landlord's acceptance of rental payments on the validity of the notice to quit. Because appellant was the prevailing party in No. 17735–81, we decline his invitation to issue what would clearly be an advisory opinion.[2]

---

1. Apparently no action was ever taken to disburse the funds in the registry. Appellant filed a motion for release of those funds under *McNeal v. Habib*, 346 A.2d 508 (D.C.1975). The hearing on that motion was continued at least three times, but it does not appear that a hearing was ever held. A docket entry indicates that the motion was denied on September 14, 1981, but two subsequent docket entries seem to suggest that the motion was still pending as late as November 18.

2. In any event, we have held that acceptance by a landlord of rental payments after the issuance of a notice to quit waives the landlord's right to demand possession under the notice. *Williams v. Tencher-Walker, Inc.*, 125 A.2d 58, 59 (D.C.1956), citing *Shapiro v. Christopher*, 90 U.S.App.D.C. 114, 117, 195 F.2d 785, 789 (1952). *But see Kaiser v. Rapley*, 380 A.2d 995, 997 (D.C.1977), in which we held that "the question of waiver is one of intent and depends upon the circumstances of each case."

■ The *res judicata* effect, if any, of a default judgment in a prior landlord-and-tenant proceeding on subsequent proceedings is currently undecided in this jurisdiction, pending the outcome of *Davis v. Bruner,* No. 11924, argued before this court en banc on October 4, 1982. We need not wait for a decision in *Davis,* however, to decide this case, which does not involve a default judgment of uncertain scope but only a defective notice to quit resulting in a dismissal, followed by a valid notice. In *Royall v. Weitzman,* 125 A.2d 680 (D.C.1956), we held that a dismissal based on a landlord's failure to give a notice to quit did not vitiate a subsequent notice to quit which was otherwise valid, nor did it preclude the landlord from filing a new suit for possession after the valid notice had run. We conclude that *Royall* is dispositive here. Even if we assume, as appellant contends, that acceptance of rental payments after a notice to quit is given invalidates the notice, it certainly does not invalidate the underlying covenant in the lease which binds the tenant to pay his rent on time. Thus, in this case, the second notice to quit was not affected by the invalidity of the first notice, and the trial court did not err in refusing to give the first judgment *res judicata* effect in the second suit for possession.

■ With respect to appellant's request for attorney's fees, it is the law in the District of Columbia that "absent a contract, a statutory provision, or a showing of unwarranted, oppressive, or vexatious conduct, attorneys' fees are not allowed as damages or costs." *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Ass'n,* 385 A.2d 20, 24 (D.C.1978) (citations omitted). Appellant failed to make any showing which would entitle him to attorney's fees under any of these criteria, and thus his request was properly denied.

■ Finally, we find no abuse of discretion in the trial court's denial of appellant's motion to transfer the funds in the registry

of the court from the earlier case to the later one. In the first place, the motion was untimely, having been filed five days after the judgment in the second case was entered. Appellant had been aware of the protective order in the first case for several months and could have sought relief much earlier. Furthermore, the trial court could not have released the funds in the registry without holding a hearing under *McNeal v. Habib, supra* note 1. We have recently held in *Goodwin v. Barnes,* 456 A.2d 1246, 1248 n. 1 (D.C.1983), that a trial court has an affirmative duty to hold a *McNeal* hearing, once a defense of housing code violations has been raised, to ensure that the money in the registry is properly distributed. Thus the relief which appellant sought could not have been granted on an expedited basis, without affording appellee an opportunity to be heard.

*Affirmed.*