Opinion Per Curiam.
 

 PER CURIAM:
 

 This case arises from reorganization proceedings before the bankruptcy court initiated by two debtors, UC Corporation and Mac’s Pipe and Drum, Inc. (collectively referred to as “UC”). They appeal a judgment of the district court that, in turn, affirmed two final orders of the bankruptcy court. Those orders awarded John J. Boyle, the landlord of certain real estate leased by UC, $11,616.57 in rent and real estate taxes and $32,757.84 in fees for expert witnesses and attorneys. We affirm.
 

 I. BACKGROUND
 

 The parties to this appeal have battled in numerous actions in the bankruptcy court . and the Superior Court of the District of Columbia since 1979. We set forth only a short history of the events relevant to this appeal.
 

 In June of 1974, UC and Boyle executed the documents that have led to this litigation. Those documents were (1) an agreement for the sale of all the stock in Mac’s Pipe and Drum, Inc., from Boyle to UC Corporation; (2) three promissory notes which financed the sale of stocks; (3) a lease on premises at 3403 M Street, N.W., Washington, from Boyle to Mac’s Pipe and Drum, Inc.; and (4) a sublease on adjacent premises at 3401 M Street, N.W., from Boyle to UC Corporation. UC operated a series of restaurant-bars on the leased property.
 

 In the fall of 1979, Boyle sued UC in the Superior Court of the District of Columbia for past due payments under the promissory notes. On February 2, 1982, Boyle and UC signed a stipulation that required payment of arrears under the notes. That stipulation also established procedures to
 
 *1491
 
 govern any later defaults on either payments due from LJC under the notes or real estate taxes due from LJC under the lease and the sublease (the leases). LJC defaulted on the tax payments in August of 1982. Boyle, following the procedures outlined in the stipulation, then obtained judgment in the superior court for $11,-284.86 and a further $1,128.49 in attorneys’ fees.
 

 Later in 1982, Boyle filed a motion in superior court seeking summary judgment on his claim that LJC had again defaulted on payments due under the notes. Resolution of that motion was stayed when UC filed a petition in bankruptcy on December 3, 1982.
 
 See
 
 11 U.S.C. § 362.
 

 Meanwhile, on September 14, 1982, Boyle filed a separate action in the Landlord and Tenant Branch of the Civil Division of Superior Court seeking unpaid rent and possession of the leased premises. The Landlord and Tenant Branch entered a protective order requiring UC to make monthly payments into the registry of the court while the lawsuit was pending. On November 16, 1982, a check for $2,900, offered by UC’s lawyer as payment under the order, was returned by the bank marked “account closed.” Because of this default, Boyle obtained a judgment in the Landlord and Tenant Branch for possession of the leased premises.
 
 Cf. Mahdi v. Poretsky Management, Inc.,
 
 433 A.2d 1085 (D.C.1981) (discussing landlord’s remedies when tenant fails to comply with protective order). On December 3, 1982, Boyle evicted UC by having the locks changed. Later that same day, UC Corporation filed a petition for reorganization under chapter 11 of the Bankruptcy Code with the bankruptcy court.
 
 [1]
 

 A few days after the eviction, new counsel for UC called Boyle’s counsel. UC’s counsel explained that UC had paid its previous lawyer $2,900 for repayment into the court registry, but the lawyer had then wrongfully issued a bad check. Boyle removed the action in the Landlord and Tenant Branch to the bankruptcy court, which promptly remanded the action back to the Landlord and Tenant Branch. On February 2, 1983, the Landlord and Tenant Branch vacated its earlier judgment granting Boyle possession. The court commented that UC “should not be penalized by what appears to be unethical conduct on the part of [its] previous attorney.”
 
 Boyle v. LJC Corp.,
 
 No. LT 64675-82 (D.C.Super.Ct. Feb. 2, 1983) (order). Later that month UC and Boyle entered into a prae-cipe dismissing the landlord and tenant action and permitting UC to assume possession of the premises. UC, as debtor in possession, regained control of the leased premises on March 10, 1983.
 

 On March 17, 1983, Boyle initiated an adversary proceeding in bankruptcy court against UC Corporation. Eventually, the bankruptcy court ordered UC to pay Boyle $11,616.57 in rent and real estate taxes due under the leases for the period December 4, 1982 to March 10, 1983, while Boyle was in possession of the premises under the judgment of the Landlord and Tenant Branch.
 
 See In re LJC Corp.,
 
 No. 82-682 (Bankr.D.D.C. Nov. 9, 1983) (order). The bankruptcy court also awarded Boyle $32,-757.84 in attorneys’ fees under a provision in the leases calling for payment of such fees under certain circumstances when the landlord sues to enforce the terms of the leases.
 
 See In re LJC Corp.,
 
 No. 82-682 (Bankr.D.D.C. Nov. 8, 1983). The district court affirmed those orders,
 
 LJC Corp. v. Boyle,
 
 Civ. No. 84-318 (D.D.C. July 10, 1984), and UC appeals.
 

 II. UC’s Obligation to Pay Rent
 

 As these events show, UC has fought vigorously since the filing of its bankruptcy petition to preserve all of its rights under the leases. It thus does not,
 
 *1492
 
 of course, dispute that it validly assumed the leases. Under the Bankruptcy Code, a debtor in possession may not assume an unexpired lease on which the debtor has defaulted unless, at the time of assumption, the debtor “cures, or provides adequate assurance that [it] will promptly cure, such default.” 11 U.S.C. § 865(b)(1)(A).
 
 [2]
 
 The debtor in possession must also “provide[] adequate assurance of future performance under such ... lease.”
 
 Id.
 
 § 365(b)(1)(C). UC does not challenge the basic proposition that, having assumed the leases, it must pay rent owed under them. Rather, UC argues that under District of Columbia law, it does not owe any rent for the time it was out of possession.
 

 We agree that UC’s obligations under the lease are initially defined by the lease itself and by the otherwise applicable nonbankruptcy law — here, by District of Columbia law concerning commercial leases. Bankruptcy law may, of course, affect the obligations of a debtor in possession under an assumed lease, but in this case, we have no reason to suppose that application of local law is at all inconsistent with any principle of bankruptcy law.
 
 [3]
 
 The salient facts we assume for our decision are that UC, a commercial tenant, failed to pay its rent into the court registry on time; that Boyle evicted UC under a judgment granting possession as a result; and that about three months later, the Landlord and Tenant Branch of the Superior Court restored UC to possession because UC’s agent, and not UC itself, was responsible for the failure to pay rent on time. We must decide whether, in these unusual circumstances, local courts would require UC to pay rent between the time it was evicted and the time it regained possession.
 

 We think UC must pay the rent. We note first that under the leases, UC was required to pay the rent, not merely to use its best efforts to see that the rent was paid. When UC’s check to the court registry bounced, UC was in plain, though inadvertent, breach of the leases, as modified and enforced by the order of the Landlord and Tenant Branch. Boyle, without any wrongdoing or violation of his contractual duties, obtained and executed a judgment for possession. Within days, UC began its vigorous and successful campaign to protect its rights under the leases. As a practical matter, it seems clear that Boyle, though in possession of the premises, could not have relet them while UC’s claim was pending. When the Landlord and Tenant Branch eventually vacated its order granting Boyle possession, it did not hold that UC had not breached the leases by failing to make the payments required under the protective order; the obvious facts were to the contrary. We interpret the decision to mean only that, on the equities created by the facts as they finally became known,
 
 *1493
 
 Boyle was not entitled to the drastic remedy of terminating the leases and permanently dispossessing LJC. The court did not purport to deprive Boyle of any other rights under the leases. Nor did it decide that LJC, having been excused from eviction for its nonperformance under the leases, could then force upon Boyle losses created by that nonperformance.
 

 A tenant seeking equitable relief from the forfeiture of a lease despite the tenant’s breach must generally place the lessor in the position it would have occupied had the breach not occurred.
 
 See Molyneaux v. Town House, Inc.,
 
 195 A.2d 744, 746-47 (D.C.1963);
 
 Federal Deposit Ins. Corp. v. Rosen,
 
 188 N.J.Super. 230, 234, 457 A.2d 52, 54 (App.Div.1983). To invoke that rule, a tenant must at least ordinarily be in possession. Here, by contrast, a dispossessed commercial tenant successfully regained possession despite its inadvertent nonpayment of rent due under a protective order, and we must decide whether the tenant owes rent for the three months it was out of possession. We think the underlying principle of the general rule applies: “if the tenant seeks equity, he must do equity. In other words, a tenant seeking relief from forfeiture must be prepared to square his account with the land-lord_”
 
 [4]
 

 Molyneaux,
 
 195 A.2d at 747;
 
 see also Kaiser v. Rapley,
 
 380 A.2d 995, 997-98 (D.C.1977) (stressing equitable discretion of court in weighing relief from forfeiture);
 
 Trans-Lux Radio City Corp. v. Service Parking Corp.,
 
 54 A.2d 144, 148 (D.C.1947) (same);
 
 cf. Executive Square Office Bldg. v. O’Connor & Assocs., Inc.,
 
 19 B.R. 143 (Bankr.N.D.Fla.1981) (discussing application of equitable relief from forfeiture of lease to chapter 11 debtor);
 
 In re Chuck Wagon Bar-B-Que, Inc.,
 
 7 B.R. 92, 94-95 (Bankr.D.D.C.1980) (same). On the facts of this case, we believe local courts would require UC to pay rent for the disputed period, and so to restore Boyle to the position he would have occupied but for LJC’s 'breach.
 

 This resolution also places the loss on the party with clear recourse against LJC’s attorney. As the bankruptcy court noted, LJC may well have a cause of action against its former attorney, and the damages in that action might include some of the sums at issue here.
 
 See
 
 Restatement (Second) of Agency § 403 & comment b (1958). Boyle is unlikely to have such a cause of action.
 
 See id.
 
 § 357. LJC selected its attorney and must shoulder the consequences of its choice.
 

 In attempting to defeat these principles, LJC relies on local cases stating that, as a general matter, “[i]f the landlord retakes possession by legal process or by accepting a voluntary surrender of possession by the tenant, the obligation of the tenant to pay future rent ceases.”
 
 Ostrow v. Smulkin,
 
 249 A.2d 520, 521 (D.C.1969) (footnote omitted);
 
 see also Satin v. Buckley,
 
 246 A.2d 778 (D.C.1968);
 
 McIntosh v. Gitomer,
 
 120 A.2d 205 (D.C.1956). The point of this rule is that a landlord may not, without a covenant in a lease imposing liability for damages after eviction, definitively end the tenant’s right of possession and nonetheless demand continued payments for that right.
 
 See Ryon v. Ortiz,
 
 131 A.2d 925, 926 (D.C.1957) (cited in
 
 Satin,
 
 246 A.2d at 780). However, Boyle’s efforts to end LJC’s right of possession failed. LJC cannot fairly continue a tenancy interrupted because of its own breach of the leases and nonetheless deny liability for rent to a landlord who fulfilled his obli
 
 *1494
 
 gations. In sum, we believe that local courts would not allow UC, after fighting to establish the validity of the leases, to seize on events resulting from its failure to pay rent in order to prevent Boyle from enforcing the leases.
 
 [5]
 
 And because, as we have noted, UC assumed the leases, the Bankruptcy Code required UC to cure its default before assumption, and to continue to perform under the leases after assumption.
 
 [6]
 

 III. Fees for Boyle’s Attorneys and Expert Witnesses
 

 Both of the leases contained identical passages requiring UC to pay fees for Boyle’s attorneys and expert witnesses in certain actions under the leases. Those passages read:
 

 If Landlord at any time is compelled to pay, or elects to pay any sum of money, or to do any act which will require the payment of any sum of money, by reason of the failure of Tenant to comply with any provision hereof, or if Landlord be compelled to incur any expense including reasonable attorney’s fees in instituting, prosecuting and/or defending any action or proceeding instituted by reason of any default of Tenant hereunder, the sum or sums so paid by Landlord, with all interest, costs and damages, shall be deemed to be additional rent hereunder and shall be due from Tenant to Landlord at the written election of the Landlord at notice to Tenant on the first day of the month following the incurring of such respective expenses.
 

 R. Item 1, Exhibit 1 at 8,
 
 Boyle v. LJC Cory.,
 
 Adversary Proceeding No. 83-106 (Bankr.D.D.C. Mar. 17, 1983) (complaint);
 
 id.
 
 Exhibit 2 at 8. UC claims that Boyle failed to give it notice of his claim for these fees, as the last sentence of these provisions requires, in the manner specified by separate paragraphs in the leases. Those paragraphs stated:
 

 Any notice to be given by either party to the other pursuant to the provisions of this lease or of any law, present or future, shall be given by registered or certified mail, return receipt requested, addressed to the party for whom it is intended at the address stated above or such other address as it may have designated in writing.
 

 Id.
 
 Exhibit 1 at 12;
 
 id.
 
 Exhibit 2 at 13.
 

 The district court accurately commented that “[Boyle’s] pleadings and the proceedings before the Bankruptcy Court are replete with references to the issue of attorneys’ fees.”
 
 LJC Corp. v. Boyle,
 
 Civ. No. 84-318, slip op. at 9 (D.D.C. July 10, 1984). The question, then, is whether on the facts of this case written notice that was indisputably received satisfied the leases, or whether punctilious compliance with the form of notice specified in the contract is required. In support of the latter position, UC relies on the following basic principle.
 

 
 *1495
 
 As a general rule, conditions which are either express or implied in fact must be exactly fulfilled or no liability can arise on the promise which such conditions qualify....
 

 “A reasonable compliance with the conditions of the contract relating to notice is indispensable to fix liability. These conditions are a material and important part of the contract[ ] and should not be [...] set aside as of no moment.”
 

 5 Jaeger, Williston on Contracts § 675 (3d ed. 1961) (quoting
 
 Jefferson Realty Co. v. Employers’ Liab. Assurance Corp.,
 
 149 Ky. 741, 748, 149 S.W. 1011, 1014 (1912)) (footnotes omitted). While we agree that the law of the District of Columbia substantially accords with this principle, we do not agree that the district court and the bankruptcy court set aside the notice provision as “of no moment.” Instead, those courts found that Boyle had reasonably complied with the provisions. We agree.
 

 “Just as the process of interpretation determines whether the parties have by their agreement made an event a condition, it also determines the nature of that event.” Restatement (Second) of Contracts § 226 comment b (1981). Thus, whether LJC received the notice for which it bargained depends primarily on ordinary methods of contract interpretation, although some special rules that do not affect the result here apply to conditions.
 
 See id.
 
 Those ordinary methods refer us to the meaning a reasonable person in the position of the parties would have given to the disputed provision.
 
 See Intercounty Constr. Corp. v. District of Columbia,
 
 443 A.2d 29, 32 (D.C.1982).
 

 The leases expressly make the litigation expenses at issue here payable as additional rent. The leases require that Boyle give notice of a claim for those expenses, but they do not call for notice before he institutes a lawsuit. Thus, UC does not suggest that, for example, the landlord is required to make a final demand on the tenant for compliance containing a threat to seek those expenses in a lawsuit before actually suing. Indeed, nothing in UC’s theory of notice would prevent Boyle from sending a demand for fees even at this very late stage of proceedings, and then pressing his demand for fees in litigation.
 
 [7]
 
 Rather, the paragraphs governing expenses require only that Boyle give written notice to UC before he collects the fees for his attorneys and expert witnesses. No one disputes that UC has had written notice through the pleadings and briefs filed in three courts of Boyle’s demand for fees. The difficulty is that the general notice provision of the leases, which was evidently drafted with the overall problem of notice under various provisions of the leases in mind, requires that written notice be delivered by registered or certified mail. UC argues that written notice, actually received, through a more reliable method than the leases demanded — namely, service of process and subsequent filings in a litigation against UC — was not enough, and that Boyle cannot collect until he provides a wholly superfluous additional notice that conforms precisely to the literal terms of the contract. To compel such notice under these circumstances would require the doing of an utterly idle and trivial act.
 

 In short, we cannot believe that UC bargained for the empty formality of a certified letter announcing what has long been known to all the parties. Here, there is certain and written notice in abundance, and we have no reason at all to think that UC and Boyle bargained for any greater benefit.
 
 [8]
 
 Moreover, even if we were to hold that undisputed actual notice in writ
 
 *1496
 
 ing failed to satisfy the technical terms in the notice requirement of the lease, we question whether reversal would inexorably follow. Since Boyle can still give valid notice, reversal on this ground would presumably trigger a pointless certified or registered letter from Boyle to UC, followed by pointlessly delayed further litigation on the other questions at issue. With the case in this posture, we might well apply the maxim that the law will not concern itself with trifles. Nothing could be more trifling, given the facts of this case, than the right to a certified or registered letter on which UC tenaciously insists.
 

 Next, UC claims that it cannot be liable for fees until Boyle actually pays the bills submitted by his counsel and experts. As the district court pointed out, the leases state that if the landlord “ 'is compelled to
 
 pay
 
 ... any sum of money ... or if Landlord be compelled to
 
 incur’
 
 ” certain expenses, UC is responsible for “ ‘the sum or sums so paid.’ ”
 
 LJC Corp. v. Boyle,
 
 Civ. No. 84-318, slip op. at 10 (D.D.C. July 10, 1984) (emphasis added by the district court). To read the phrase “the sum or sums so paid” to release UC from liability for expenses Boyle has incurred but not yet paid would thus read out of the contract the separate clause listing expenses incurred for which UC must indemnify Boyle. We think the more reasonable interpretation is that UC is liable for both costs paid and expenses incurred.
 

 UC also points out that Boyle obtained an award of attorneys’ fees in the action he brought in superior court to force payment of back taxes and sums due under the three promissory notes. According to UC, the bankruptcy court violated principles of claim preclusion by allowing Boyle further fees connected with that same action. However, the record makes it quite clear that the bankruptcy court awarded fees only for the separate action in the Landlord and Tenant Branch and the adversary proceedings before the bankruptcy court.
 
 [9]
 
 UC also objects to the amount of the fees and the procedures by which they were determined. We reject those challenges as unfounded, generally for the reasons stated by the district court and the bankruptcy court.
 
 [10]
 
 We therefore find that the fees the bankruptcy court awarded to Boyle were properly considered additional rent, as the leases provide, and must be paid for the reasons we explain above in Part II.
 

 Conclusion
 

 For these reasons, the judgment of the district court is
 

 Affirmed.
 

 [1]
 

 . Mac's Pipe and Drum later filed a separate petition in bankruptcy, and Boyle brought an adversary proceeding against it seeking relief from the automatic stay imposed by 11 U.S.C. § 362. Boyle’s adversary proceeding against Mac’s Pipe and Drum, No. 83-144, was then consolidated with his existing adversary proceeding against LJC Corporation.
 
 See In re UC Corp.,
 
 30 B.R. 292 (Bankr.D.D.C.1983) (order).
 

 [2]
 

 . Although the quoted provision from the statute refers to the obligations of a trustee, under chapter 11 of the Bankruptcy Code a debtor in possession, with certain limitations not relevant here, stands in the shoes of a trustee.
 
 See
 
 11 U.S.C. § 1107(a).
 
 See generally
 
 J. Anderson, Chapter 11 Reorganizations § 8.03 (1984); 5 Collier on Bankruptcy H 1100.01[2] at 1100-20 to -21 (L. King 15th ed. 1985).
 

 [3]
 

 .
 
 Cf., e.g., In re Fontainebleau Hotel Corp.,
 
 515 F.2d 913 (5th Cir.1975) (looking to state law to determine whether lease terminated before filing of bankruptcy petition). Courts have suggested that "within the context of reorganization [a bankruptcy court] has the equitable power to modify [provisions of an assumed lease] if it would benefit the estate and not significantly prejudice the lessor,”
 
 In re Easthampton Sand & Gravel Co.,
 
 25 B.R. 193, 198 (Bankr.E.D.N.Y.1982) (citations omitted), although equity will not relieve a debtor "of conditions which are clearly vested by the contracting parties as an essential part of their bargain and which do not contravene over[r]iding federal policy,”
 
 id.
 
 (citation omitted).
 
 See generally
 
 Ehrlich,
 
 The
 
 As
 
 sumption and Rejection of Unexpired Real Property Leases Under the Bankruptcy Code
 
 — A
 
 New Look,
 
 32 Buffalo L.Rev. 1, 33-45, 66-67 (1983); Nimmer,
 
 Executory Contracts in Bankruptcy: Protecting the Fundamental Terms of the Bargain,
 
 54 U.Colo.L.Rev. 507, 547-52 (1983). We believe that enforcement of the lease, as interpreted according to local law, is entirely equitable in light of the interests protected by bankruptcy law. We thus do not consider what authority the bankruptcy court might have on different facts to decline to apply local law in interpreting and enforcing a lease assumed by a chapter 11 debtor.
 

 [4]
 

 .
 
 Molyneaux
 
 requires a tenant seeking relief from forfeiture to pay rent due "to date of tender.”
 
 Molyneaux,
 
 195 A.2d at 747. In this case, LJC suggests that promptly after LJC learned of its counsel’s nonpayment of rent, new counsel for LJC informed Boyle that LJC would pay the rent due under the protective order. Thus, it may have "tendered” at least some of the back due rent before it regained possession. However,
 
 Molyneaux
 
 is certainly not authority for the proposition that a debtor in LJC’s position is absolved from liability for rent accruing after tender of some arrearages but before restoration to possession.
 
 Moly-neaux
 
 concerned tenants in possession, who would naturally be liable for rent due after tender directly under the lease. Thus, in context, the phrase “to date of tender” only meant that all back rent must be paid, and did not speak to the unusual problem this case presents.
 

 [5]
 

 . Our holding does not mean that we understand local law to bar tenants who are dispossessed for failure to pay rent due under a protective order from ever regaining possession without incurring an obligation to pay rent for the time they were out of possession. We merely decide that, assuming arguendo local courts might sometimes dispense with payment of rent for the time a tenant is out of possession, they would not do so on the equities of this case. Those equities encompass the following facts, among others: (1) LJC is a commercial tenant; (2) LJC’s agent was, by LJC’s own account, at fault for the nonpayment of rent; (3) LJC was out of possession for a relatively brief time, and the amount of rent due for time out of possession is thus not unconscionably high; and (4) no evidence of unreasonable conduct by the landlord appears.
 

 [6]
 

 . The district court held that Boyle could enforce LJC’s obligation to pay rent under 11 U.S.C. § 503(b)(1)(A), which allows payment of claims for "the actual, necessary costs and expenses of preserving the estate.” We agree that because LJC assumed the leases, payments necessary to cure its default before assumption and to satisfy its obligations after assumption qualify as expenses of administration under § 503(b)(1)(A).
 
 See
 
 2 Collier on Bankruptcy ¶ 365.03 at 365-15 (L. King 15th ed. 1985); Ehrlich,
 
 supra
 
 note 3, at 66-67. We do not consider whether any of the sums at issue in this case might have been payable as expenses of administration had LJC rejected the leases.
 

 [7]
 

 . Thus, LJC complains that
 
 "[t]o this date
 
 Boyle has failed to comply with the notice provisions.” Brief of Appellant LJC Corp. at 23 (emphasis added). LJC also concedes that "it is conceivable that, on compliance with the requisites of the lease [in the notice and litigation expenses paragraphs], Boyle will have recourse to relief under [the paragraph allowing recovery of litigation expenses].”
 
 Id.
 

 [8]
 

 . We decide this issue narrowly on the facts of the case. If contracting parties actually agreed that notice only in a particular form is an indispensable condition to recovery under a particular contractual provision, local law would ordi
 
 *1496
 
 narily require us to enforce the condition. We also observe that statutory requirements of notice present entirely different problems.
 

 [9]
 

 . The voluntary dismissal of the action in the Landlord and Tenant Branch was without prejudice,
 
 see Boyle v. UC Corp.,
 
 No. LT 64675-82 (D.C.Super.Ct. Feb. 25, 1983) (praecipe), and the dismissal consequently has no preclusive effect.
 
 See
 
 Restatement (Second) of Judgments § 20(1) (1982).
 

 [10]
 

 . In particular, LJC objects to the bankruptcy court’s determination of certain setoffs. Boyle acknowledged that during the time LJC was out of possession, he collected $1,400 in subrents from residences on the leased premises. As those subrents would have been payable to LJC had it remained in possession, the bankruptcy court reduced Boyle’s judgment for back due rent by the $1,400 Boyle had collected. On appeal, LJC maintains that even though Boyle actually collected only $1,400 in subrents, a larger amount was due from the subtenants. In LJC's view, the setoff should therefore have been the total amount owed in subrents, rather than the amount Boyle in fact collected.
 

 The record does not contain evidence supporting LJC’s claim that Boyle failed to collect all subrents due. Moreover, at the hearing on LJC’s motion in the bankruptcy court for reconsideration of the judgment, the court specifically asked "is there any factual dispute still remaining as to the amounts that are due under the rent, in view of the court's resolution of the offset issue?" Transcript of Hearing, Oct. 25, 1983, at 9-10. LJC’s counsel replied "I don’t believe so, Your Honor. We’ll stipulate to the 1400 [dollars].”
 
 Id.
 
 at 10. LJC can thus hardly complain here that the setoff was limited to $1,400.