Phillip SUGGS, Appellant,

v.

LAKRITZ ADLER MANAGEMENT, L.L.C., Appellee.

No. 06–CV–182.

District of Columbia Court of Appeals.

Argued April 3, 2007.

Decided Aug. 16, 2007.

B. Marian Chou for appellant.

Stephen O. Hessler for appellee.

Before FARRELL and RUIZ, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

Appellant Phillip Suggs ("Suggs") leased an apartment in a building owned by appellee Lakritz Adler Management, LLC ("Lakritz"). When Suggs failed to pay any rent for May or June 2005, a "Notice to Cure Violation of Tenancy or Vacate" was served on Suggs on June 23. The Notice stated that Suggs was violating "the terms and conditions of [his] tenancy" because of "[c]ontinual late and delinquent payment of rent." When Suggs continued to pay no rent, Lakritz filed a Complaint for Possession of Real Estate on September 12, 2005, setting forth as its basis "material and uncured breach of lease; possession requested; NON REDEEMABLE." The complaint sought only possession, and not

back rent,[1] based upon the lease violation of consistent late payment of rent. *See Kaiser v. Rapley,* 380 A.2d 995, 997 (D.C. 1977).

At the bench trial, the trial court ruled that Suggs's claims of existing violations of the Housing Regulations of the District of Columbia, 14 DCMR § 800 (2004), were irrelevant to Lakritz's suit for possession only, and excluded the presentation of evidence on that issue. We agree with Suggs that this ruling was in error.

■■■ Ever since the landmark decision in *Javins v. First Nat'l Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071 (1970), it has been established that a tenant may raise a landlord's substantial breach of housing regulations as a defense to an eviction action based upon nonpayment of rent. However, the trial court accepted Lakritz's argument, also presented on appeal, that our holding in *McNeal v. Habib,* 346 A.2d 508, 510 n. 2 (D.C.1975), established the principle that evidence of housing regulation violations is irrelevant in a suit solely for possession based on a notice to quit (in this case, a notice to cure or vacate). Reliance on this decision was misplaced in light of subsequent statutory developments.

In *McNeal v. Habib,* the landlord gave his tenant at sufferance a thirty-day notice to quit which the court said was pursuant to D.C.Code § 45–902 (1973).[2] *McNeal,* 346 A.2d at 510. Under the law then in effect, this notice terminated the tenancy upon the expiration of the thirty days and the landlord then had the right to possession. Thus, although the tenant in his answer alleged housing regulation violations, we noted that this defense would normally "be irrelevant in a possessory action based solely upon a valid 30–day notice to quit." *Id.* at 510 n. 2. This conclusion was clearly correct since the landlord—as the law then stood—had the right to terminate a tenancy at sufferance on thirty days' notice, thereby achieving the right to possession.[3] Housing regulation violations would be relevant only with respect to past due rent, which was not at issue in a suit solely for possession.[4]

■■■ In 1974, this legal regime was markedly changed by the enactment of rent control legislation, which included a provision that was the predecessor of what is now D.C.Code § 42–3505.01(a), (b)

---

1. It did, however, seek a protective order from the court requiring that all future rent payments be paid into the court registry. Such an order was entered by consent on October 31, requiring Suggs to pay into the registry $300 a month during the pendency of the case. Several such payments were made prior to the entry of judgment for Lakritz on January 17, 2006. The record does not indicate what disposition has been made of these funds in the registry.

2. Now codified at D.C.Code § 42–3202 (2001). That provision in fact applies to periodic tenancies. Tenancies at will are governed by § 42–3203 and tenancies at sufferance by § 42–3204, statutes which also require a thirty-day notice to quit in order to terminate the tenancy. A tenancy for a fixed term requires no notice to quit in order to give the landlord the right to possession. D.C.Code § 42–3201. All of these provisions are subject to the overriding provisions of the rental housing law where applicable, as discussed *infra.*

3. An exception existed, as it does today, if the tenant claims retaliatory eviction. *Edwards v. Habib,* 130 U.S.App.D.C. 126, 138–40, 397 F.2d 687, 699–701 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).

4. However, housing regulation violations could be relevant if the tenant claimed retaliatory eviction, *see supra* note 3, and also if, as in *McNeal* itself, a protective order had been entered for the duration of the litigation.

(2001).[5] Briefly put, as relevant here, a residential tenant in an apartment subject to the rental housing law[6] may not be evicted from the apartment, notwithstanding the expiration of the tenant's lease, except for nonpayment of rent or for violation of another "obligation of tenancy."[7] Where eviction is sought based on the violation of an obligation of tenancy other than nonpayment of rent, the landlord must give a thirty-day "notice to correct the violation or vacate."[8] Thus, if the tenant in *McNeal* fell within the protection of the current rental housing law, *McNeal* on its own facts would not today justify a verdict in the landlord's favor. Rather, the landlord would have to show that he had gained the right to evict the tenant under D.C.Code § 42–3505.01 even though he opted to seek only possession.

*Kaiser v. Rapley* arose after the new regime more protective of a tenant's continued occupancy under the rental housing law had come into effect. *See* 380 A.2d 995 (D.C.1977). The tenant in that case had a one-year lease and refused to vacate the premises upon the termination of the year. *Id.* at 996. The tenant had been consistently late in making rent payments and on five occasions tendered checks that were rejected by the bank for insufficient funds. *Id.* The landlord served timely notice on the tenant to vacate at the end of the lease term, which apparently was on December 31, 1975. *Id.* When the tenant did not do so, the landlord brought eviction proceedings on January 6. *Id.* After the expiration of the lease, the tenant tendered the rent payments for January and Febru-

**5.** These subsections read:

> (a) Except as provided in this section, no tenant shall be evicted from a rental unit, notwithstanding the expiration of the tenant's lease or rental agreement, so long as the tenant continues to pay the rent to which the housing provider is entitled for the rental unit. No tenant shall be evicted from a rental unit for any reason other than for nonpayment of rent unless the tenant has been served with a written notice to vacate which meets the requirements of this section. Notices to vacate for all reasons other than for nonpayment of rent shall be served upon both the tenant and the Rent Administrator. All notices to vacate shall contain a statement detailing the reasons for the eviction, and if the housing accommodation is required to be registered by this chapter, a statement that the housing accommodation is registered with the Rent Administrator.
>
> (b) A housing provider may recover possession of a rental unit where the tenant is violating an obligation of tenancy and fails to correct the violation within 30 days after receiving from the housing provider a notice to correct the violation or vacate.

**6.** It is not challenged that Suggs's apartment so qualifies. We note that the notice to cure used by Lakritz is silent about registration

with the Rent Administrator, if required, and, as Suggs asserts, the record does not indicate whether the notice was filed with the Rent Administrator, both requirements imposed by D.C.Code § 42–3505.01(a). These matters may be addressed on remand.

**7.** Although payment of rent is obviously a duty under a lease, the use in D.C.Code § 42–3505.01 of the phrase "obligation of tenancy" in subsection (b) requiring thirty days' notice obviously does not encompass that duty, since such notice is not required in cases of "nonpayment of rent" under subsection (a). The statute also permits the landlord to recover possession in a number of other circumstances, such as for his personal use, to make improvements, and the like. Because of the structure of D.C.Code § 42–3505.01, secondary sources commonly divide residential eviction actions into "nonpayment cases" and "notice cases." *See* District of Columbia Practice Manual 18–1 (15th ed.2006); Carol S. Blumenthal, Real Estate Practice in the District of Columbia, Maryland and Virginia 7–4 to 7–7 (Paul D. Pearlstein ed., Supp.2007).

**8.** This statutory notice substitutes for the notice to quit that would otherwise be required under D.C.Code § 42–3202 or its counterparts. *See Cormier v. McRae,* 609 A.2d 676, 680 (D.C.1992).

ary[9] and, in her defense to the eviction action, argued that nonpayment or late payment of rent was not a "violation of an obligation of tenancy" entitling the landlord to evict the tenant. *Id.* at 996–97. She also argued that, in any event, at the time of the suit she was not violating any obligation of the tenancy.[10] *Id.* at 997.

The trial court determined that the real issue before it was whether "a willful, calculated and consistent failure by a tenant to pay rent when due [can be] a present violation of a tenant's obligation under a lease, notwithstanding that the tenant presently owes no back rent." *Id.* Noting that one of the obligations under a lease is to pay the rent when due, the trial court concluded that there was a "continuing willful violation of the tenancy and that therefore the landlord was entitled to possession." *Id.* We agreed, concluding that the legislative purpose in protecting tenants did not extend to the "willful and consistent course of conduct held by the trial court to exist here."[11] *Id.*

■■ *Kaiser* establishes that an action may be brought against a tenant for habitual late payments of rent, even though the tenant is at the time current on rent payments and hence cannot be evicted for nonpayment of rent.[12] We have subsequently recognized the distinction between the two types of actions in, *e.g., Mullin v. N St. Follies Ltd. P'ship,* 712 A.2d 487, 491 (D.C.1998) and, very recently, in *Luskey v. Borger Mgmt.,* 917 A.2d 631, 632–33 (D.C. 2007). Late payments of rent, at least when continuous and willful, are violations of an "obligation of tenancy" which may be the subject of eviction upon the giving of the required thirty-day statutory notice, just as much as violations based upon occupancy limits, banned use of the premises, or other non-rent-related violations. *See, e.g., Grubb v. Wm. Calomiris Inv. Corp.,* 588 A.2d 1144, 1147 (D.C.1991). In the case before us, Lakritz attempted to use this theory of eviction. The notice given under the statute specified not nonpayment of rent, but rather "continual late and delinquent payment of rent" and the complaint alleged "material and uncured

9. It is not entirely clear whether this tender was made before or after the filing of the eviction action, but, given the argument of the tenant, it appears that it was made prior thereto.

10. The tenant also argued that she was not given the opportunity to cure the violation within thirty days, as required by the statute. *Kaiser, supra,* 380 A.2d at 997. We did not address this argument, perhaps assuming that the November notice to vacate at the end of the term, coupled with the long series of complaints about the late payments, sufficed in the circumstances.

11. We also sustained the trial court's refusal to exercise its equitable power to grant equitable relief to the tenant upon the tender of all back due rent under the doctrine of *Trans–Lux Radio City Corp. v. Serv. Parking Corp.,* 54 A.2d 144 (D.C.1947), concluding that the failure to pay rent and doing so with checks drawn on insufficient funds was "willful, cal-

culated and consistent." *Kaiser, supra,* 380 A.2d at 997–98 (also citing *Molyneaux v. Town House, Inc.,* 195 A.2d 744, 746–47 (D.C. 1963)). *Cf. Pritch v. Henry,* 543 A.2d 808 (D.C.1988) (*Trans–Lux* may be available in late payment of rent cases).

12. *See also Grimes v. Newsome,* 780 A.2d 1119 (D.C.2001). Conceptually, although the distinction may be a subtle one, two distinct lease obligations are involved, one being the covenant to pay rent in a certain amount and the other being the time when the rent must be paid. At common law, absent contrary agreement, the rent stipulated in the lease was not due until the end of the lease term. *See Isquith v. Athanas,* 33 A.2d 733, 734 (D.C. 1943); RESTATEMENT (SECOND) OF PROP.: LANDLORD & TENANT § 12.1 cmt. e (1977). Modern lease agreements, of course, commonly provide for rent payments in advance. The record does not contain the Suggs lease, but he does not challenge his obligation to make monthly payments in advance.

breach of lease." In doing so, Lakritz argues that, as in *McNeal,* the housing regulation violations raised by Suggs are irrelevant since only possession was sought and, under *Kaiser,* the tenant may be evicted for continual late payments.

■■■ However, as indicated, *McNeal* predated the statutory tenancy where eviction could no longer be based on the landlord's unfettered right to terminate a lease in accordance with its terms. And *Kaiser* did not involve any claim of housing regulation violations to justify the delayed payments based upon the ruling in *Javins.* It is undoubtedly true that in most actions involving claims of a tenant's failure to cure a violation of an "obligation of tenancy" unrelated to rent payment after receiving the requisite notice, the existence of housing regulation violations will be irrelevant (except in cases of claims of retaliatory eviction). However, where housing regulation violations are asserted by a tenant and the action is based on the continual failure to pay the rent due in a timely manner, such violations cannot be irrelevant to the question of what rent was in fact "due"; that is, in the words of the statute, "the rent to which the housing provider is entitled." [13] To accept Lakritz's theory would mean that a landlord, faced with a tenant's claim of housing regulation violations and a consequent dispute over the rent due, could circumvent the issue and evict the tenant by claiming late (or,

as in this case, no) payments and by seeking only possession. Such a ruling would effectively nullify the housing regulation protections provided by *Javins* and the rental housing law's protection of tenants against eviction, except on the grounds set forth in the rental housing law. Therefore, the trial court here should have admitted the full range of evidence relating to alleged housing regulation violations.

The judgment appealed from is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

**13.** At oral argument, counsel for Lakritz acknowledged that if there were substantial housing regulation violations which had not been cured upon due notice to Lakritz, Suggs would be warranted in withholding the rent. We therefore do not reach any issues such as whether, in such circumstances, a tenant might have an obligation to tender at least what he, in good faith, calculates to be the fair rental value of the property in its diminished state, *see, e.g., Hsu v. Thomas,* 387 A.2d 588, 589 (D.C.1978), or to place the disputed rent in escrow, *see, e.g., Dorfmann v. Boozer,*

134 U.S.App.D.C. 272, 274, 414 F.2d 1168, 1170 (1969). Notwithstanding the trial court's evidentiary ruling, some evidence relevant to the alleged housing regulation violation—although by no means complete—was presented at trial and the trial court questioned whether Suggs had the right to remain on the premises for six months with no rent payment at all, regardless of the condition of the premises, but this observation was made without the benefit of a full presentation of the relevant facts.