**Mark PRITCH, Appellant,**

v.

**Theodosia HENRY, Appellee.**

**No. 86–1226.**

District of Columbia Court of Appeals.

Submitted March 16, 1988.

Decided June 27, 1988.

---

Stephen O. Hessler, Washington, D.C., was on the brief, for appellant.

Theodosia Henry, pro se.

Before PRYOR, Chief Judge, and BELSON and ROGERS, Associate Judges.

ROGERS, Associate Judge:

In this appeal, we must decide whether a notice to correct or vacate for failure to pay rent promptly, D.C. Code § 45–2551(b) (1986 Repl.Vol.), expires thirty days after the notice is received or on the first day of the rental period immediately following the lapse of the thirty day notice period. Mark Pritch (the "landlord") appeals from a judgment rejecting his claim for possession based upon Theodosia Henry's (the "tenant's") failure to pay, within thirty calendar days after receiving the notice to correct, rent on the first day of the month falling within that period as her lease required. We hold that a notice to correct or vacate for failure to timely pay rent expires on the first day of the rental period immediately following the lapse of the thirty day notice period which commences on receipt of the notice. Because the record on appeal does not indicate whether the tenant timely paid the rent within the cure period, we normally would remand the case for further proceedings. However, the trial judge found alternatively that the tenant was entitled to remain in possession under *Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C. 1947), and we find no abuse of discretion. Accordingly, we affirm.[1]

I

On January 8 or 9, 1986, the tenant was personally served with a notice to correct or vacate, D.C. Code § 45–2551(b), which declared that the tenant was "violating the obligation of [her] tenancy" by "constantly being late with [her] rent." The notice

---

1. The tenant, who was represented by counsel below, appears *pro se* on appeal. By order dated October 7, 1987, following the tenant's third request for an extension of time to file her brief, a motions division of this court denied the tenant's motion for an extension of time within which to file her brief, and ordered the clerk of the court to schedule the appeal "on the record and appellant's brief alone." The case was placed on the summary calendar and neither party requested oral argument.

further stated that the tenant had thirty days to cure the foregoing violation, and

in the event you do not cure within the 30 day period, this letter shall be deemed to be notice to quit and vacate, and you are hereby notified that the Landlord desires to have and again possess the premises occupied by you and you are notified to quit and vacate the premises occupied by you, as set forth above, no later than midnight March 10, 1986. In the event you fail to vacate the premises as aforesaid, it will be necessary to secure possession of the premises.

The notice also quoted from paragraph 2 of the lease, signed by the tenant on September 12, 1970, in which the tenant covenanted to "pay said rent, at the time specified,[2] without deduction or demand" and also provided that any failure "to pay said rent in advance as aforesaid" shall be deemed a breach of the agreement at the landlord's option and "such failure ... shall operate as a Notice to Quit, any other Notice to Quit being [hereby] expressly waived."

Almost immediately after receiving the notice, the tenant paid the January rent on January 10, 1986. However, the tenant did not pay the February rent until February 10, ten days after the rent was due under the terms of the lease and more than thirty days after she had received the notice to correct or vacate. The landlord accepted the late February rent payment but refused the payments for March and April when they were tendered. The landlord filed a complaint for possession on April 14, 1986.

At a bench trial held on July 21, 1986, the landlord's managing agent testified that the tenant had been continuously delinquent in her rent payments during 1985 and the preceding years. Rent payment records maintained by the managing agent's office, admitted into evidence without objection, confirmed a consistent pattern of late rent payments by the tenant over the several years prior to the filing of the complaint. The managing agent testified that the landlord had initiated as many as twelve previous lawsuits[3] against the tenant for failure to pay the rent. As a result, the landlord had incurred substantial legal and office costs which were not recoverable from the tenant. On cross-examination, the managing agent acknowledged that the tenant had informed him that she had been injured on the job and was forced to miss a considerable amount of work. In addition, the managing agent admitted that there was a sign hanging in the rental office which stated that "the rents are due on the first of the month and no later than the 10th [and] a late fee would start on the 10th of the month." The managing agent agreed with tenant's counsel's characterization of the landlord's policy (as conveyed by the sign) as "basically ... a 10 day grace period." He also acknowledged that his office had sent every tenant a letter which stated that late fees would not be assessed until the 10th of the month. The landlord's assistant managing agent corroborated the managing agent's testimony in all significant respects including the fact that the "sign in the [rental] office says that rent is late after the 10th of the month."

The tenant testified that she was injured on the job in August, 1983, and was unable to work for approximately two years. She returned to work in August, 1985, but was only able to work for about four hours a day for three days a week. In February, 1986, she increased her work schedule to about six hours a day for three days a week, and her hours remained at that level until the time of the lawsuit. The tenant testified that she always attempted to pay her rent on time and that when her payments were late it was "[b]ecause most of

---

**2.** The lease stated that the tenant agrees to pay the rent "in monthly installments of [$87.50] ... payable in advance on the FIRST day of each ensuing month, to and at the office of LIVINGSTON MANOR INCORPORATED." The notice to correct or vacate did not quote this part of the lease and did not state explicitly that the rent was due on the first of the month.

**3.** The trial judge took judicial notice of five previous landlord and tenant actions filed by the landlord against the tenant for nonpayment of rent between November, 1984, and December, 1985.

the time there wasn't enough to pay on time and I had to double up or borrow money to pay it." She further testified that she did not believe her rent was late until the 10th of the month. Her belief was founded upon the sign in the rental office which stated that rent was not late until the 10th of the month and "[b]ecause [throughout] the months and years of paying like that [ ] I've never been charged [a] late fee until the 10th of the month." Finally, the tenant testified that when she received a notice to correct or vacate, she paid her January and February rent.

The trial judge denied possession of the premises to the landlord on three alternative grounds. First, the judge ruled that the tenant had complied with the notice to correct or vacate by paying her January and February rent by the 10th of each month. Second, the tenant's pattern of late rent payments did not rise to the level of a "willful, calculated and consistent failure by a tenant to pay rent when due" under *Kaiser v. Rapley*, 380 A.2d 995 (D.C. 1977). Third, because the tenant was up to date in her rent payments at the time of trial, the judge ruled that she could remain in possession under *Trans–Lux Radio City Corp. v. Service Parking Corp., supra*, 54 A.2d 144.

## II

D.C.Code § 45–2551(b) (1986 Repl. Vol.) provides:

A housing provider may recover possession of a rental unit where the tenant is violating an obligation of tenancy and fails to correct the violation within 30 days after receiving from the housing provider a notice to correct the violation or vacate.

The landlord contends that the tenant failed to cure the lease violation, that is, the failure to pay rent on time, within the

allotted thirty day period when she did not pay her February rent until February 10, 1986, more than thirty days after she received a notice to correct or vacate on January 9, 1986.[4] We disagree.

Under § 45–2551(b), a tenant is entitled to the benefit of a full thirty days within which to correct a lease violation and thus preempt a housing provider's opportunity to recover possession of a rental unit for a violation of an obligation of tenancy. *See* 14 DCMR § 4301.2 ("The notice [to correct or vacate] shall provide at least thirty (30) days for correction of the violation and shall specify what actions need to be taken by the tenant to avoid an eviction.").[5] According to the landlord, once the tenant received the notice to correct or vacate, she was under an enhanced obligation to pay her February rent on time within thirty days of January 9, the date she received the notice. However, under the terms of the written lease, the tenant's February rental obligation accrued on February 1. Thus, under the landlord's theory, the tenant would have had only 23 days to correct the violation of the lease, which is plainly insufficient notice under § 45–2551(b). *See Kaiser v. Rapley, supra*, 380 A.2d at 997 (thirty day notice provision intended as a protection from arbitrary and/or retaliatory evictions).

We note, as did the trial judge, the awkwardness of construing the statutory thirty day cure period in the context of the rental obligation to pay rent on time, as opposed to many other rental obligations which are not time dependent. For example, paragraph 4 of the lease prohibits the tenant from using the premises for any nonresidential purpose. Assume that the landlord became aware that the tenant was using the premises as a business office and notified the tenant to correct this violation within thirty days. It is clear, under these circumstances, that the cure period would

---

4. It is immaterial, for the purpose of this appeal, whether the tenant received the notice to correct or vacate on January 8 or 9, 1986, and we will assume she received the notice on January 9.

5. *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (en banc)

(statutory construction begins with the language of the statute). *See also Charles E. Smith Mgmt., Inc. v. District of Columbia Rental Housing Comm'n,* 492 A.2d 875, 877 (D.C.1985) (deference to agency interpretation where reasonable and not inconsistent with statute).

begin to run from the date the notice was received, and would expire thirty days later. By contrast, although the obligation to pay rent on time is in a sense a continuous one, that obligation only arises periodically, that is, on whatever day of the month the lease designates rent is due. Thus, for the tenant to have the benefit of the full statutory period, we hold that the cure period for an obligation to pay rent on time will expire, not thirty days after the notice is received, but rather on the first day of the rental period immediately following the lapse of the thirty day notice period which commences on receipt of the notice. Consequently, if the notice to correct or vacate is not received by the tenant exactly thirty days before the first day of the next rental period, the cure period will be longer than thirty days.

In the instant case, the tenant received the notice to correct or vacate for failure to pay rent promptly on January 9 and the lease designates the rent is due on the first of the month. Thus, the cure period expired on March 1, the first day of the rental period immediately following the lapse of the thirty day notice period (February 8), and in order for the tenant to cure the lease violation within the statutory period she was required to tender her March rent on or before March 1.[6] Since the trial judge focused on whether the tenant had paid her February rent within the cure period, the record on appeal does not indicate the date the tenant tendered the March rent. A remand is unnecessary, however, because the trial judge ruled alternatively that the tenant was entitled to possession under *Trans–Lux Radio City Corp. v. Service Parking Corp., supra,* 54 A.2d 144.

■ Under *Trans–Lux,* a court may invoke its equitable jurisdiction and permit a tenant to redeem her tenancy after a judgment of possession has been entered against her. To exercise this redemption opportunity, the tenant must tender "[t]he rent due, with interest and costs." *Id.* at

147 (quoting *Sheets v. Selden,* 74 U.S. (7 Wall.) 416, 421, 19 L.Ed. 166 (1869)). In ruling that the tenant had tendered the whole amount owing to the landlord, the trial judge stated:

> I will also order the monies in the Registry of the Court released to the [landlord] in this case and based on [the tenant's] tender of the checks for March and April it seems to me that the [tenant] is up to date in her rent and has effectively Trans–Luxed for purposes of this case. Certainly no late charges are due for March and April since those rents were earlier tendered and not accepted by the landlord.

The landlord did not challenge the finding by the trial judge that the tenant had, in fact, "effectively *Trans–Luxed,*" nor does he challenge it on appeal.

Rather, the landlord contends that the trial judge erred in affording the tenant the benefit of equitable relief under *Trans–Lux* because she had willfully violated the terms of her lease by failing to pay her rent on the first of each month. The landlord argues, and we agree, that in these circumstances willfulness is shown by an intentional, as distinct from an inadvertent or accidental, act. *See Hager v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 475 A.2d 367, 368 (D.C. 1984); *see also Trans–Lux Radio City Corp. v. Service Parking Corp., supra,* 54 A.2d at 146. The trial judge was mistaken in suggesting that *Kaiser v. Rapley, supra,* 380 A.2d 995, requires a showing that the tenant had the ability to pay and chose not to do so. Inability to pay rent is not a defense to a suit for possession. *Mahdi v. Poretsky Management, Inc.,* 433 A.2d 1085, 1088 (D.C.1981). Nothing in *Kaiser v. Rapley* is to the contrary. That case simply involved unique evidence of willfulness which the trial court determined, upon weighing the equities between the parties, barred equitable relief under *Trans–Lux. See Kaiser v. Rapley, supra,* 380 A.2d at 997–98.

6. It is immaterial, for purposes of curing the violation of the obligation to pay rent by the first of the month, when the tenant paid her

January or February rent since her first opportunity to pay her rent on time with sufficient notice was to pay her March rent by March 1.

In the instant case, the trial judge found that the tenant, like the tenant in *Trans–Lux,* 54 A.2d at 146, reasonably could believe that her rent was not due until the tenth day of the month based on the sign in the rental office. However, once the landlord put the tenant on notice that in the future he would hold the tenant to the terms of the lease and require timely rent payments, the tenant was obliged to comply. *See* M. FRIEDMAN, FRIEDMAN ON LEASES § 16.501, at 893 & n. 31 (2d ed. 1983) ("If landlord has regularly accepted late payments of rent or other performance he may not hold tenant strictly to [timely] payment without giving tenant advance notice of his intended change.") (collecting cases).[7] The trial judge also weighed the fact that the tenant's on-the-job injury had prevented her from returning to work on a full-time basis, a circumstance readily distinguishable from the conduct of the tenant in *Kaiser v. Rapley.* Finally, the judge considered the fact that the tenant had paid her January and February rents by the tenth day of the month and that her tender of rent for subsequent months had been refused by the landlord, as well as the landlord's testimony conceding that the office sign said rent was late if it was not paid by the tenth day of the month. The testimony of the tenant and the landlord's witnesses provided ample support for the trial judge's ruling that the tenant was entitled to equitable relief under *Trans–Lux.* D.C.Code § 17–305(a); *Frog, Inc. v. Dutch Inns of America, Inc.,* 488 A.2d 925, 928 (D.C.1985). Since the *Trans–Lux* procedure permits redemption notwithstanding a tenant's default, it is no less available to remedy a breach of the obligation to pay rent on time than it is to remedy a breach of the obligation to pay rent at all. *See Simth v. Warren Petroleum Corp.,* 126 A.2d 152, 153 (D.C.1956) (*Trans–Lux* doctrine entitled to liberal application). We find no abuse of discretion by the trial judge in applying *Trans–Lux.*

Accordingly, the judgment is affirmed.

---

7. *See Entrepreneur, Ltd. v. Yasuna,* 498 A.2d 1151, 1162 (D.C.1985) (landlord's conduct indicating acquiescence in breach of lease covenant bars enforcement thereof unless notice and opportunity to cure given to tenant); *Shannon & Luchs Co. v. Tindal,* 415 A.2d 805, 806 (D.C. 1980) (whether right is waived depends on totality of the circumstances); *Nassau Trust Co. v. Montrose Concrete Products Corp.,* 56 N.Y.2d 175, 184, 436 N.E.2d 1265, 1269, 451 N.Y.S.2d 663, 667 (1982) (distinguishing between estoppel and waiver).