In this landlord's action for possession of an apartment, the trial court granted summary judgment for the tenant-appellee. The tenant successfully argued that, although he had received a 30-day "notice to cure or vacate" pursuant to D.C. Code § 45-2551(b) (1990) (Rental Housing Act of 1985), the landlord-appellant had failed to comply with the further requirement of D.C. Code § 45-1402 (1990) that a notice "to quit" a month-to-month tenancy must be given, not merely 30 days in advance of termination, but at least 30 days before the end of a rental period and thus at least 30 days before the date on which a new month-to-month tenancy would otherwise begin. To the contrary, the landlord argued that § 45-2551(b) supersedes — implicitly repeals — § 45-1402 as applied here, and thus that, in order to evict the tenant, the landlord was not required to provide a notice to quit expiring on the very day the lease had commenced. Although we analyze the issue somewhat differently from the landlord's approach, we agree that § 45-1402 is inapplicable. Accordingly, we reverse.
 I.
On February 24, 1976, the tenant signed a one-year lease for an apartment on the third floor of 3228 Hiatt Place, N.W., for the period March 24, 1976 through March 23, 1977. When the lease expired, the tenant stayed on month-to-month. On February 27, 1990, the landlord served the tenant with a 30-day notice to cure or vacate that expired on March 31, 1990. The notice was based on the following alleged violations of the lease:
 not notifying landlord of repair work needed; repeated refusal to allow access to apartment to begin repairs; allowing extra people to occupy [the] apartment; refusal to pay $480 for theft of electricity; repeated threats to [landlord]; endangering the health and safety of all tenants by opening fire doors.
When the tenant failed to cure the violations or to vacate the apartment, the land *Page 678 
lord filed a suit for possession in the Landlord and Tenant Branch of Superior Court on April 4, 1990.
The tenant moved to dismiss or, in the alternative, for summary judgment, basing his argument on two statutes. D.C. Code § 45-2551(b) directs that:
 A housing provider may recover possession of a rental unit where the tenant is violating an obligation of tenancy and fails to correct the violation within 30 days after receiving from the housing provider a notice to correct the violation or vacate.
The earlier statute, D.C. Code § 45-1402 (enacted in 1901), similarly provides for terminating a month-to-month tenancy with a 30-day written notice to quit, but § 45-1402 directs that the notice must expire "on the day of the month from which such tenancy commenced to run."
The trial court concluded that the 30-day notice requirement of § 45-2551(b) applied but that § 45-1402 still governed the timing of the notice. The court accordingly accepted the tenant's argument that the landlord should have given notice 30 days or more before the day of the month on which the lease began to run. The trial court reasoned that, because the landlord notified the tenant to cure or vacate by March 31, 1990, the landlord — to achieve that goal — should have given notice no later than February 22, 1990, 30 days before March 24, the day the monthly tenancy began.[1] The tenant, however, did not receive notice until February 27, 1990. The trial court ruled that because the notice did not satisfy § 45-1402, the landlord was not entitled to sue for possession and granted the tenant's motion for summary judgment.
 II.
In reviewing a summary judgment order, our standard is the same as the trial court's. See Taylor v. Eureka Inv. Corp.482 A.2d 354, 357 (D.C. 1984). We examine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c). In so doing, we must examine all facts in the light most favorable to the non-moving party. SeeThompson v. Shoe World, Inc., 569 A.2d 187, 189 (D.C. 1990).
The central question is whether the § 45-1402 timing requirement for a "notice to quit" applies when a landlord wishes to evict a month-to-month tenant for breach of a covenant — now called an "obligation of tenancy," D.C. Code § 45-2551(b) — in the lease.
 A.
It is important, first, to note the common law origins of § 45-1402 and how rent control legislation has affected that statute. At common law, either party could terminate a periodic (e.g., month-to-month) tenancy, without claiming a breach of the lease, merely by giving adequate notice. More specifically, under the common law, "notice a full period in advance of the end of a period was required." 1 A. JAMES CASNER, ET AL. AMERICAN LAW OF PROPERTY § 3.23 at 222 (1952); see id. § 3.90 at 377. In keeping with the common law, Congress in 1901 enacted the predecessor of the present § 45-1402, codifying for the District of Columbia the requirement that the 30-day notice required for terminating a month-to-month or quarter-to-quarter tenancy must expire "on the day of the month from which such tenancy commenced to run." Act of Mar. 3, 1901, ch. 854, § 1219, 31 Stat. 1382 (establishing District of Columbia Code).
In contrast with § 45-1402, Congress adopted in 1901 what is now D.C. Code § 45-1401 (1990) to govern leases of real estate "for a certain term," entitling a landlord to sue for possession without notice to quit "immediately upon the expiration *Page 679 
of the term." Similarly, D.C. Code § 45-1404 (1990), adopted in 1901 to govern "tenancies by sufferance," entitles a landlord to terminate the tenancy "at any time" but, akin to § 45-1402, requires a "notice in writing . . . to quit the premises leased," though not a specified number of days in advance.[2]
In Jack Spicer Real Estate, Inc. v. Gassaway, 353 A.2d 288
(D.C. 1976), we interpreted the impact of rent control regulations on these sections of the Code. In that case, the landlord filed suit for possession after serving a tenant at sufferance with a simple notice to quit under § 45-1404, without including any of the reasons for eviction specified in Section 10 of the District of Columbia Rent Control Regulation No. 74-20. We held that the simpler, "conflicting" termination provisions codified at §§ 45-1401 and 45-1404 "must yield to more recently enacted rent control regulations" requiring a notice showing a legitimate reason for termination. JackSpicer, 353 A.2d at 291-92.
Similarly, in Administrator of Veterans Affairs v. Valentine,490 A.2d 1165, 1170 (D.C. 1985), we held that D.C. Code § 45-1561 (1981) — a statute incorporating provisions similar to those in Rent Control Regulation No. 74-20, which had been applied in Jack Spicer — "supersede[d] the earlier enacted [D.C. Code] §§ 45-222 and 45-1403." These earlier enacted provisions had permitted termination of tenancies at will merely by giving 30 days notice in writing by either party.Valentine, 490 A.2d at 1167.
D.C. Code § 45-1561 (1981) (construed in Valentine), governing evictions under the Rental Housing Act of 1980, replaced Rent Control Regulation No. 74-20, see D.C. Law 3-131, § 501 (Mar. 4, 1981) (construed in Jack Spicer). Similarly, D.C. Code § 45-2551 (1990), governing evictions under the Rental Housing Act of 1985, has supplanted former § 45-1561, in some instances with identical eviction provisions. See D.C. Law 6-10, § 501 (July 17, 1985); D.C. Law 6-192, § 13(g) (Feb. 24, 1987). JackSpicer and Valentine, therefore, indicate — for purposes of this case — that after enactment of a series of rent control statutes, no basis remains for saying that a housing landlord[3]
could still use § 45-1402, any more than §§ 45-1401, -1403, or -1404, to terminate a tenancy without giving a valid reason specified by statute.
 B.
The fact that a landlord subject to § 45-2551 no longer may terminate a month-to-month tenancy under § 45-1402 without giving an adequate statutory reason, however, still leaves a critical question: given the required 30-day notice under both § 45-1402 and § 45-2551(b), does the timing provision of § 45-1402 nonetheless apply here? The answer has to be no, not because the two provisions conflict — § 45-2551(b) contains no timing provision — but because our statutory and caselaw have removed all right of a residential landlord subject to § 45-2551 to use § 45-1402 for any purpose. As we shall see, the 1980 Rental Housing Act withdrew from residential landlords the right to give merely a notice to quit, as such, for breach of a lease obligation (other than for nonpayment of rent) and, as a result, left no room for § 45-1402, including its timing provision, to apply in such a case.
In Jones v. Brawner Co., 435 A.2d 54 (D.C. 1981), the landlord sued for possession of an apartment alleging the tenant had willfully and consistently failed to pay rent on time. Two statutes applied: D.C. Code § 45-1699.6(b)(1) (1980 Supp.) — part of the 1977 Rental Housing Act — required a "notice to cure";[4] D.C. Code § 45-906 (1973), *Page 680 
called for a "notice to quit."[5] This court indicated that these two notices were different documents, not only because their purposes were obviously different but also because service of process on a tenant under § 45-906, including substituted service, was different than that allowed under the 1977 Rental Housing Act. Id. at 56. We reversed the judgment of possession in favor of the landlord because the landlord had failed to meet the service requirements of § 45-906. In doing so, we rejected the argument that our decision in Jack Spicer implied that the Rent Control Regulation No. 74-20 had superseded the service provisions applicable to a notice to quit under § 45-906. We expressly confirmed that "the provisions of the regulation did not supplant the notice requirements specified in the previously enacted § 45-906. The two were to be read harmoniously." Jones, 435 A.2d at 56 (citation omitted).
This reasoning in Jones could be read to justify appellee's argument that the § 45-1402 timing provision should be held to supplement the 30-day notice requirement under § 45-2551(b) because they can "be read harmoniously" together. Id. Two years after Jones, however, we decided Cooley v. Suitland Pkwy.Overlook Tenants' Ass'n, 460 A.2d 574 (D.C. 1983), a suit for possession based on alleged violation of a lease obligation limiting residency in the apartment to family members and others named in the rental application. We noted in Cooley that the law since Jones had changed — i.e., that the 1980 Rental Housing Act, in supplanting the 1977 Act, had made "it explicitly clear that a notice to cure or vacate is all that a landlord is required to give to a tenant before filing suit for possession based on a tenant's failure to correct a violation of the tenancy." Id. at 575-76. Thus, a separate "notice to quit" was no longer required; the 1980 Act "merg[ed] both notice requirements into one." Id. at 576.[6]
This merger of a notice to cure and a notice to quit into one required notice — the "notice to cure or vacate" — under the 1980 and 1985 Rental Housing Acts leaves no room for the § 45-1402 timing requirement when § 45-2551(b) applies to the termination of a month-to-month tenancy. By eliminating the need for — indeed, the validity of — a separate notice to quit when a landlord gives notice to cure or vacate, the 1980 Act and its successor, the 1985 Rental Housing Act governing this case, have altogether eliminated the applicability — to the landlord — of any statutory provision, such as § 45-1402, that provides rules governing only "notices to quit" as such.[7] *Page 681 
Recent caselaw confirms this analysis. In Pritch v. Henry,543 A.2d 808 (D.C. 1988), we considered a timing-of-notice problem in a possessory action based on alleged nonpayment of rent. We held not only that § 45-2551(b) itself required a thirty-day notice to cure or vacate but also — without even a reference to § 45-1402 — that the cure period "will expire, not thirty days after the notice is received, but rather on the first day of the rental period immediately following the lapse of the thirty day notice period which commences on receipt of the notice." Id. at 812. Thus, for nonpayment cases, we incorporated the timing requirement of § 45-1402 into § 45-2551(b) — and explained why that was necessary — without relying on § 45-1402 itself. We suggested in dicta, however, that in a case where the tenant had violated a lease obligation other than the obligation to pay rent, this timing restriction would not apply. See id. at 811-12. The lease in Pritch
prohibited use of the premises for any nonresidential purpose. We said:
 Assume that the landlord became aware that the tenant was using the premises as a business office and notified the tenant to correct this violation within thirty days. It is clear under these circumstances, that the cure period would begin to run from the date the notice was received and would expire thirty days later.
Id. at 811-12.
We now confront a situation similar to the one hypothesized in Pritch. The landlord here alleged that the tenant had allowed extra persons to live in the apartment, had refused to pay for pilfered electricity, had refused to allow access to the apartment for repairs, and had endangered the health and safety of other tenants. The tenant has not denied these allegations, and for purposes of this review we accept them as true.[8] We now hold, in keeping with the Pritch dicta, that a landlord may file an action for possession of leased residential premises alleging violation of "an obligation of tenancy," other than nonpayment of rent, if the tenant has not "correct[ed] the violation within 30 days after receiving . . . notice to correct the violation or vacate," D.C. Code § 45-2551(b) — without regard to the timing requirement for nonpayment cases imposed in Pritch and without regard to the timing requirement in § 45-1402.
In sum, beginning with § 45-1651 of the 1980 Rental Housing Act, as construed in Cooley, and continuing through § 45-2551 of the 1985 Act, which contains the same "correct or vacate" language, the District's law has erased the separately required notice to quit for all cases in which § 45-2551 applies. With that erasure, therefore, the successive Rental Housing Acts have also eliminated the § 45-1402 timing provision, which now applies only when a notice to quit as such, not a notice to cure or vacate, may still be used (e.g., when a tenant elects to terminate a month-to-month tenancy).
 III.
"It is trite but true to state that forfeitures are not favored. A breach by a tenant must be a violation of a substantial obligation to be enforceable by forfeiture." 2 MILTON A. FRIEDMAN, FRIEDMAN ON LEASES § 16.2, at 975 (3d ed. 1990). We are dealing here, however, not with the tenant's eviction but with the grant of summary judgment in the tenant's favor, a ruling which prevented the landlord from maintaining *Page 682 
a suit for possession at all. It is for the trial court to determine whether the breaches alleged here were of sufficient magnitude and willfulness to allow the landlord to oust the tenant. See Entrepreneur, Ltd. v. Yasuna, 498 A.2d 1151,1160-62 (D.C. 1985) (collecting cases where breach has led to forfeiture and cases where forfeiture disallowed).
Concluding as we do that § 45-1402 does not apply when a tenant protected by § 45-2551 allegedly violates a lease obligation, we are left only with the question whether the landlord's notice to cure or vacate here was sufficient under § 45-2551(b). We conclude that it was. On February 27, 1990, the tenant received notice to cure or vacate by March 31, 1990. The landlord filed suit on April 4, 1990. Thus, the tenant received notice of more than 30 days during which time he could have cured the violations and avoided the landlord's suit for possession.
We hold, accordingly, that the trial court erred in granting the motion for summary judgment. We remand the case for proceedings consistent with this opinion.
Reversed.
[1] The 30-day notice period begins to run on the day the tenant receives notice. See Pritch v. Henry, 543 A.2d 808, 812 (D.C. 1988). February 22-28 (7 days), when added to March 1-23, total 30 days.
[2] However, D.C. Code § 45-1404 requires a terminating tenant to give the landlord a 30-day notice.
[3] We express no opinion on whether § 45-1402 remains valid and applicable when either a commercial lessor or a tenant seeks to terminate a month-to-month tenancy.
[4] See Jones, 435 A.2d at 54-55 (referring to notice required under Rental Housing Act as "notice to cure").
[5] D.C. Code § 45-906 (1973) is the predecessor statute to id. § 45-1406 (1990).
[6] The 1977 Rental Housing Act had provided that no rent paying tenant could be evicted, notwithstanding expiration of the lease, unless the tenant was violating an obligation of the tenancy and failed to correct the violation "within thirty (30) days after receiving notice thereof from the landlord," D.C. Code § 45-1699.6(b)(1) (1980 Supp.), quoted in Cooley, 460 A.2d at 576 (emphasis in Cooley). This required notice to correct the violation did not necessarily embrace the separately required notice to quit. See Cooley, 460 A.2d at 575-576. The 1980 Act, however, replaced the "notice thereof" language with "notice to correct such violation or vacate." D.C. Code § 45-1561(b) (1981), quoted in Cooley, 460 A.2d at 576 (emphasis in Cooley). This language, therefore, effectively merged the notice to cure and the notice to quit into one required notice. See Cooley, 460 A.2d at 576. The 1985 Rental Housing Act presently in effect has retained the "notice to correct the violation or vacate" language. See D.C. Code § 45-2551(b) (1990).
[7] The tenant's argument that the timing provision of § 45-1402 applies to termination of month-to-month apartment leases for breach of a covenant other than for nonpayment of rent is premised on an assumption that § 45-1402 (and its statutory predecessors) applied to such residential tenancies before rent control regulations were enacted. The statutory language appears broad enough to cover such terminations; the analysis in Jones discussing the interplay of rent control provisions and notices to quit before the 1980 Rental Housing Act was adopted suggests that § 45-1402 and its companion provisions applied until the merger of notices to cure and to quit recognized in Cooley; and local landlord-tenant law treatise writers have assumed as much. See JULIAN KARPOFF, LANDLORD AND TENANT LAW IN THE DISTRICT OF COLUMBIA, Ch. VI § 61 (1977); KENNETH LOEWINGER AND R.J. TURNER, LOEWINGER ON D.C. LANDLORD-TENANT LAW, Ch. 9, §§ 9.1-9.7 (1988). We have found a few — and only a few — cases suggesting that a month-to-month tenant who breached a covenant other than the obligation to pay rent was entitled to a thirty-day notice to quit. These cases did not refer to the timing of such a notice, but because a statutory predecessor of § 45-1402 was on the books at the time of each decision, presumably the caselaw was referencing these statutory requirements (reflecting the common law), including the timing provisions. See Dunnington v. Thomas E. Jarrell Co.,96 A.2d 274, 275 (D.C. 1953) (because tenant had not used apartment in unlawful manner, court held tenant had not waived notice to quit "and consequently the tenant was entitled to a thirty days' notice"); Hall v. Henry J. Robb, Inc.,32 A.2d 707, 708 (D.C. 1943) (where tenant violated lease provision prohibiting subletting, court noted tenant's written waiver of notice to quit). But see Banks v. Torre, 56 A.2d 52 (D.C. 1947) (in suit for possession, where tenant operated shoe shine parlor on premises limited by lease to use as private dwelling, court sustained directed verdict for landlord with no mention of notice to quit).
[8] In reviewing the grant of summary judgment, we are bound to view the facts in the light most favorable to the non-moving party. See Thompson, 569 A.2d at 189.